# FRANK JOHNSTON v. PHILADELPHIA CITY.

### APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued January 7, 1891—Decided February 16, 1891.

The case of the plaintiff, in an action against a city to recover damages for personal injuries received, showing simply that, while driving upon a paved street, forty feet wide, the plaintiff's horse shied and drew the carriage against a rise at the side from twelve to eighteen inches high, throwing the plaintiff out, no question of negligence on the part of the defendant was presented, and it was not error to direct a judgment of nonsuit.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 380 January Term 1890, Sup. Ct.; court below, No. 157 June Term 1889, C. P. No. 1.

On June 1, 1889, Frank Johnston brought trespass against the city of Philadelphia, to recover damages for personal injuries suffered by the plaintiff, by reason of the alleged negligence of the defendant in allowing the highway on Girard Avenue to be in a defective condition. Issue.

At the trial on December 12, 1889, the plaintiff testified as follows:

"I was riding with Mr. Sleesman on the fifteenth day of February, 1889. We were coming east on Girard Avenue, me and Mr. Sleesman. As we got at Ninth street the gates [of the railroad crossing] were down, and we stopped the wagon until we could get by. After the gates were up, as we entered on the tracks, the horse became frightened. He started off in the centre of Girard Avenue on the newly-paved Belgian block part. As we got at Eighth street, there was a transfer station there. The horse went to the right of Girard Avenue. As the wagon was entering from the newly-paved part of the street to the old part, the street that was left, the old part being much higher than the new part, the front wheels of the wagon struck the projected part of the street. I was thrown

Opinion of the Court.

out on the left side of the wagon. I fell under the hind wheel, and the hind wheel passed over my back."

Other witnesses testifying for the plaintiff, as sufficiently shown in the opinion of the Supreme Court, at the close of the plaintiff's case, the court, BIDDLE, J., on motion of defendant, entered a judgment of nonsuit, with leave, etc. A rule to show cause why the judgment should not be taken off having been discharged, the plaintiff took this appeal, assigning the order directing the judgment of nonsuit and the order discharging said rule, for error.

*Mr. Lewin W. Barringer* (with him *Mr. J. C. Jones*), for the appellant.

Counsel cited, as to the condition in which highways must be kept by municipalities: Hey v. Philadelphia, 81 Pa. 44; Jackson Tp. v. Wagner, 127 Pa. 184; Sutter v. Young Tp., 130 Pa. 72; Lower Macungie Tp. v. Merkhoffer, 71 Pa. 276; Pittston Bor. v. Hart, 89 Pa. 389. As to the province of court and jury: Fritsch v. Allegheny City, 91 Pa. 226; McKee v. Bidwell, 74 Pa. 218; Neslie v. Railway Co., 113 Pa. 300. As to liability of municipalities for accidents with runaway horses: Plymouth Tp. v. Graver, 125 Pa. 24.

*Mr. Howard A. Davis* (with him *Mr. Charles F. Warwick*, City Solicitor), for the appellee.

Counsel cited: Jackson Tp. v. Wagner, 127 Pa. 184; Lancaster City v. Kissinger, 1 Penny. 250; Bishop v. Schuylkill Tp., 20 W. N. 105; Dillon on Mun. Corp., §§ 1007, 1015; Titus v. Northbridge, 97 Mass. 258; Stone v. Hubbardston, 100 Mass. 54.

OPINION, Mr. JUSTICE GREEN:

The testimony in this case is extremely meagre and unsatisfactory, but, such as it is, it is the testimony for the plaintiff, and we must pronounce upon it as we find it.

The plaintiff and another were driving eastward on Girard Avenue in a light open wagon. At Ninth street a train of cars was passing, and the wagon was stopped at the gate until the train had gone by. The plaintiff testified: "After the gates were up, as we entered on the tracks, the horse became fright-

ened. He started off in the centre of Girard Avenue, on the newly-paved Belgian block part. As we got at Eighth street there was a transfer station there. The horse went to the right of Girard Avenue. As the wagon was entering from the newly-paved part of the street to the old part, the street that was left, the old part being much higher than the new part, the front wheels of the wagon struck the projected part of the street. I was thrown out on the left side of the wagon. I fell under the hind wheel, and the hind wheel passed over my back." From this testimony we would be obliged to infer that the driver was endeavoring to ascend from the lower pavement to the higher, at the moment of the accident, in which event there could be no recovery, unless it was further proved that there was no other way provided for the parties to pass on in the direction in which they were traveling. But the other testimony shows that there was such a way provided, and that they were not endeavoring to ascend from the lower to the higher part of the pavement.

In his cross-examination, the plaintiff said: " By reason of the passing train, the horse started off at more than an ordinary gait. We were about fifteen feet from the transfer station when the horse shied. We were driving along the newly-paved part. The horse turned or shied, as you might call it, and when he turned, this place being much higher, the front wheels struck this part. I did not see the projected part before the accident." The only other witness, the driver Sleesman, who testified to the actual facts of the accident, said: " The gates went up. The horse started off. As he got down toward Eighth street he was going faster. As we got down to the waiting-room at Eighth and Girard Avenue, the horse, in turning to the right, struck something, I don't know what. Whatever it was, it gave us a wrench. Mr. Johnston fell out. I was driving. I held on longer. I held on to the lines until I got across Eighth street, then I fell out." It was admitted on the trial, by counsel, " that the width of Girard Avenue from curb to curb was eighty-four feet, and that the sides, for a distance of about twenty-two feet from each curb, were paved with cobble-stones, and that the centre of the street was paved with Belgian blocks, the part so paved being about forty feet in width."

Opinion of the Court.

It is therefore manifest that the centre of the roadway was paved with Belgian blocks for a width of forty feet, and that the parties were driving along this part of the street at the time of the accident. Other evidence was given that the cobble-stone parts of the pavement, at the sides of the street, were from a foot to a foot and a half above the central part; and that there was a waiting station of the passenger railway at Eighth street; that it stood in the centre of the street; and that the distance between it and the edge of the cobble-stone pavement, on each side, was ·five or six feet; that there were wagons driven along both sides of the waiting-room, on the Belgian blocks, but there was not sufficient space on each side of the waiting-room for two to pass at one time. No evidence was given as to the width or length of the waiting-room; but, as there were ten to twelve feet of Belgian blocks left on the two sides, it was perhaps twenty-eight to thirty feet in width. There is nothing in the testimony to show how long it was, and therefore we cannot know the length of the passage on each side, which was five or six feet wide. Had the accident occurred in going through this passage, it might with much force have been contended that a question was raised for the jury to determine, whether the passage was of sufficient width to be a reasonable protection against accident. But such was not the testimony. On that subject the plaintiff testified: " We were about fifteen feet from the transfer station when the horse shied. We were driving down the newly-paved part. The horse turned, or shied, as you might call it; and when he turned, this place being much higher, the front wheels struck this part." Sleesman said: " The horse turned to the right when I got near the transfer station." He had previously said: " The horse, in turning to the right, struck something. I don't know what."

Upon the testimony, therefore, the accident occurred before reaching the transfer station; and, as the street was forty feet wide except at the station, there was no question of negligence arising from the narrowness of the street. In point of fact the wagon, which was not upset, did go through the narrow passage without any collision, and the driver did not leave it until he had crossed Eighth street. This leaves only the question whether a well-paved street forty feet wide, with a rise on

either side of it twelve to eighteen inches high, is such proof of negligence on the part of the city as to require a court to leave that question to a jury. There are doubtless hundreds of streets in Philadelphia not wider than, and a great many not nearly so wide as forty feet between the curb-stones; and it will scarcely be contended that, if a runaway horse casts a wagon against a curb-stone in such a street, the city would be liable for any resulting consequence. In the present case the rise on either side of the Belgian pavement, while it was not produced by a curb-stone, was very similar thereto, and could only affect the question of negligence as a limitation to the travel. In that aspect it was in no sense evidence of negligence, as the intervening space of the road-way was of ample width, and thoroughly paved in the most approved manner. We think the learned court below was right in directing the non-suit.

Judgment affirmed.