## THE FARMERS' HIGH LINE CANAL AND RESERVOIR COMPANY v. WESTLAKE.

1. STATUTORY CONSTRUCTION—IRRIGATING DITCHES.

The statute (Mills' Ann. Stats., sec. 3962) requiring ditch companies to keep highways open for safe and convenient travel is applicable only to ditches constructed after its enactment, and which cross the highway or encroach so much upon it as to interfere with travel.

2. DAMAGES.

Generally, a person is responsible only for such consequences of his fault as are the natural result thereof, and, where the fault concurs with something extraordinary, he will not be answerable for the extraordinary result.

3. PROXIMATE CAUSE.

When a horse being driven along a highway which was reasonably safe for ordinary travel becomes unmanageable as a result of fright caused by the passing of a railway train, leaves the road, and throws the driver into an irrigating ditch, where he is drowned, the fright of the horse must be taken as the primary and efficient cause of the accident.

*Appeal from the District Court of Jefferson County.*

THIS action was instituted by Sarah J. Westlake, appellee, as plaintiff below, to recover from The Farmers' High Line Canal and Reservoir Company damages for the death of her husband, Andrew Westlake, caused, as it is averred, by the negligence of the defendant company. In the district court a verdict and judgment for forty-five hundred (4500) dollars was rendered. The defendant brings the case here by appeal. The following provision of the statute is referred to in the opinion: " Any person or persons, corporation or company, owning or constructing any ditch, race, drain or flume in, upon or across any highway, shall keep the highway open for safe and convenient travel by constructing bridges over such ditch, race, drain or flume; and, within five days after any ditch is constructed across, in or upon any highway, at any point thereof, so as to interfere

with or obstruct such highway, the person or persons own-
ing or constructing such ditch shall erect a good and sub-
stantial bridge, of not less than twenty feet in width, across
the same, which shall thereafter be maintained by the county;
*Provided*, That all such bridges which shall be of greater
length than twenty (20) feet shall be constructed as herein
provided, and thereafter maintained in proper condition for
safe travel by the owner or owners of said ditch.   Any per-
son or persons, corporation or company, constructing any
ditch, race, drain or flume in, upon or across any highway,
and failing to keep the highway open for safe and conven-
ient travel, as in this act provided, shall forfeit the sum of
twenty-five dollars, to the county, for each and every day of
failure to keep the same open for safe and convenient travel,
as aforesaid.   And any person or persons, corporation or
company, who shall fail to erect a good and substantial
bridge across any ditch, race, drain or flume, within five days
after the same is constructed, in, upon or across any highway,
and keep the same in proper condition and repair, as herein
provided, shall forfeit the sum of twenty-five dollars to the
county for each and every day of failure to erect such bridge
and keep the same in repair, as aforesaid, together with the
cost of constructing there a good and substantial bridge, or
making necessary repairs, which the road overseer of the dis-
trict shall at once proceed to build or repair, and such party
or parties so neglecting shall also be liable in damages to any
person or persons damaged by such neglect."   Sec. 3962,
Mills' Ann. Stats.

Messrs. OSBORNE & TAYLOR and Mr. W. A. DIER, for
appellant.

Mr. N. Q. TANQUARY and Messrs. HOWARD & HOWARD,
for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The facts upon which the case must be determined are
practically uncontroverted.   Andrew Westlake, the deceased,

was drowned in appellant's ditch. The place of the accident is near to, or within the corporate limits of, the city of Golden, at a place where the wagon road from Denver to Golden passes along the steep side of one of the foothills of the Rocky Mountains, the road at the point rapidly descending toward the town of Golden. Just below this road the defendant company was operating a ditch about twenty feet in width and several feet in depth, the descent of the ditch being to the east, toward the city of Denver. A few feet above the ditch and wagon road are the tracks of The Colorado Central Railroad Company.

Upon the day of the accident the deceased, with a companion, was driving a horse harnessed to a covered carriage along the highway in the direction of the city of Golden. As he approached the brow of the hill, a regular train, due in Golden at 9:45 A. M., was proceeding towards Denver, having just left the station at Golden. Although this train, when first observed, was some distance away, the horse became greatly frightened by its approach and manifested much restlessness, but in a short time apparently came under the control of the driver. When the carriage, with its occupants, had reached a point part way down the hill, the train at that time being nearly opposite to them, the engineer blew the whistle for a highway crossing. This so frightened the horse that the driver lost all control over him, and he plunged down the hill, precipitating the buggy into the ditch, where it was overturned in part by the force of the swift current, and Mr. Westlake, becoming entangled in the top, was drowned before assistance could reach him.

The evidence leaves us in doubt as to whether, at the place of the accident, the wagon road or the ditch was first constructed. The origin of both go back to the earliest settlement of the territory; the road being in existence as early as 1860, and the ditch as early as 1861. In 1862 appellant's grantor obtained a special charter from the legislature for the construction of this ditch. This charter gave the Ditch Company, subject to accrued rights, a right of way for the

ditch one rod in width upon each side of the center. The ditch, as originally constructed, was only a few feet in width, while the wagon road was barely sufficient for the passage of vehicles. With the settlement of the country and consequent increase of travel and an increased demand for water, the ditch was enlarged and the road widened from time to time to meet the growing demands of the community. In view of the uncertainties surrounding the history of the two enterprises, we shall not attempt to determine which right of way has priority. It is sufficient to say that each was lawfully in the place where found at the time of the accident.

It is apparent from the averments of the complaint that the pleader originally based plaintiff's right of action upon the statute, which requires ditch companies, under certain circumstances, to keep highways open. Mills' Ann. Stats., sec. 3962. An examination of this statute discloses that it has no application, for although it says that ditch companies in certain circumstances must keep highways open for safe and convenient travel, it requires this to be done only by constructing bridges. The provision of the statute only becomes applicable where a ditch crosses a highway, or at least encroaches so much upon it as to interfere with travel. It was never intended to cover cases like this, where the ditch and the roadway are parallel for a thousand feet. It is quite common in this state to construct highways and ditches near together and parallel for miles. Moreover, the statute applies only to ditches constructed after its passage. This is apparent from subsequent portions of the act, making it the duty of the county in which the bridge is situate to maintain the same after it is once constructed, and fixing a penalty in case the bridge is not built within five days after the ditch is constructed across the highway, etc.

This construction is in harmony with the charge of the district court to the jury, which proceeds upon the theory of a common law liability only. At common law, as a general rule, a person is responsible only for such consequences of his fault as are the natural result thereof, and where the

fault concurs with something that is extraordinary, he will not be answerable for the extraordinary result. This principle has been applied in many cases in which suits have been instituted against the public authorities charged with the duty of keeping a highway in repair, and where the accident is charged to have resulted from their negligence, and it has been repeatedly held that if there are two efficient independent causes uniting to produce injury to the traveler upon a highway, the primary cause being one for which the authorities are not responsible, the injury cannot be said to have resulted from their negligence in failing to keep the highway in repair, though the traveler be himself without fault.

The evidence in this case fails to show negligence either in the construction or enlargement of defendant's ditch. The roadway, at the point of the accident, was suitable for all ordinary purposes and safe for the passage of horses that could be controlled. The location of the ditch and roadway has been practically the same for many years, and teams were at the time daily passing back and forth without accident, and presumably without serious risk of accident.

The roadway was reasonably safe for the passage of ordinary teams. In the frenzied condition of the horse that was being driven by the deceased, it is doubtful if any reasonable precaution that the public officers or the defendant company could have taken would have insured safety. The injury sued for was primarily caused by the fright of the horse, and that fright was not caused by any defect in the roadway or in the construction or operation of defendant's ditch.

The record is replete of evidence with reference to the character of the horse ; many witnesses testifying that he was vicious and uncontrollable in temperament, other witnesses testifying that they regarded him as kind and gentle in disposition. This evidence becomes unimportant, however, in view of the fact that at the time of the accident the horse, by reason of the passage of the train, or the blowing of the whistle, or both, was seized with a sudden frenzy, so that he

was entirely beyond the control of the driver, and, blinded by fright, left the road and ran into the defendant's ditch, where the driver was drowned. It is apparent that the passage of the train and the blowing of the whistle were the primary causes of the accident, and for this reason the plaintiff is not entitled to a recovery against this defendant.

In the case of *Moulton v. The Inhabitants*, 51 Me. 127, it is said: "When a horse becomes unmanageable, unless his condition is caused by a defect in the highway, such defect is not the primary cause of an accident to which it contributes. A witness, on being asked to state the cause of such an accident, would give that which caused the condition of the horse. So long as the primary cause continues in operation, it may occasion the damage; and, if it happen upon a defective road, it is by no means thereby rendered certain that it would not otherwise have occurred upon one not defective." This language was used in a suit against the inhabitants of a town for negligence in not keeping a highway in repair. The plaintiff, at the time of the accident, was crossing a bridge over a narrow stream, when his horse became frightened by some animal jumping into the water. The bridge was well built, except there was no railing. The horse, by reason of his fright, ran so near the edge of the bridge that the body of the wagon was detached from the forward wheels and thrown into the stream, and the court held that the town was not liable.

In the case of *Jackson v. Town of Bellevieu*, 30 Wis. 250, the damages sued for were for injuries to a horse and vehicle which occurred at a point in a highway where the road was defective. The evidence showed that the horse, at the time of the accident, was in a condition of fright and uncontrollable. The condition of the horse was caused by the smell of blood from a slaughter house, and not from any defect in the highway. If the horse had been under control and driven with ordinary care and skill, the injury might not have happened, and the court held that the town was not liable. The opin-

ion was prepared by the late lamented Chief Justice Dixon, and is written with his usual clearness and force.

The case of *Schaeffer v. Tp. of Jackson* (Pa. St.), reported in 24 Atlantic Rep., p. 629, is also strongly in point. The decisions in some of the foregoing cases were rendered upon statutes, but these do not change the common law liability in respect to the question under consideration. They are based upon general principles of the common law and require no vindication at our hands, and we shall leave the subject with the following additional citations: *Perkins v. Fayette,* 68 Me. 152; *Spaulding v. Winslow,* 74 Me. 528; *Aldrich v. Gorham,* 77 Me. 587; *Beall v. Tp. of Athens,* 81 Mich. 536; *Titus v. Inhabitants of Northbridge,* 97 Mass. 258; *Horton v. City,* 97 Mass. 266.

Not every sudden shying of a horse will constitute a primary cause of an accident resulting from such shying and a defective highway, but where, as here, the horse, as a result of fright caused by a passing train, becomes unmanageable and leaves the road, and, plunging down the side of a mountain, throws the driver into an irrigating ditch, where he is drowned, the fright of the horse must be taken as the primary and efficient cause of the accident.

It is urged that the roadway, at the place of the accident, was narrowed by seepage from a spring at the upper side of the road, and that this contributed to the result; but we fail to see how the Ditch Company can be mulct in damages for the negligence of the public authorities in not protecting the road against this seepage.

Upon the record no case has been made against the appellant, and the judgment must be reversed, and the case remanded.

*Reversed.*