## SCOFIELD v. TOWN OF POUGHKEEPSIE.

(Supreme Court, Appellate Division, Second Department.   December 23, 1907.)

1. HIGHWAYS—OBSTRUCTIONS—TELEPHONE POLES.
    Telephone companies have a right to erect their poles in the highway, subject to the reasonable regulation of the highway commissioners; hence the presence of a telephone pole along the side of a highway is not an obstruction constituting a nuisance per se.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Highways, §§ 417, 418.]

2. SAME—DUTY OF HIGHWAY COMMISSIONERS.
    Highway commissioners are merely required to use reasonable care to see that the highways are reasonably safe for travel; and the test of their duty is whether men of average intelligence and precaution would have considered that the situation was one of danger to a traveler using ordinary care under the circumstances.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Highways, § 480.]

3. SAME—ACTIONS FOR INJURY—SUFFICIENCY OF EVIDENCE.
    In an action against a town for injuries received on a rural highway, it appeared that the railing of a bridge which crossed a creek curved out at the end, and extended some distance between the road and the creek. Two telegraph poles were placed at the roadside about 3 feet from the railing, about 13 and 17 feet, respectively, from the bridge abutment, and in a direct line with the railing on the bridge. They were set well away from the highway as used, and about 12 to 20 inches inside the grass plat at the side of the traveled portion. The road narrowed as it approached the bridge; but there was 19 feet of clear space between the bridge rail-

ing and the nearest rail of a street railroad at the opposite side. When plaintiff approached the bridge, at about 11 o'clock one evening during a thunder storm, he saw an automobile approaching, pulled his horse to the side of the highway, and collided with the telephone poles, thus causing the injury complained of. *Held*, that the accident was not caused by any actionable negligence of the highway commissioners, and plaintiff could not recover.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Highways, §§ 527, 528.]

Appeal from Trial Term.

Action by William Irving Scofield against the town of Poughkeepsie. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

Argued before WOODWARD, JENKS, RICH, MILLER, and GAYNOR, JJ.

Allison Butts, for appellant.

Frank B. Lown, for respondent.

WOODWARD, J. The plaintiff alleges as his cause of action that he was injured in or near the Casper Creek Bridge, on the New York and Albany Post Road, in the town of Poughkeepsie, on the 15th day of July, 1904, while driving south from Poughkeepsie; such injuries being caused by the defective and narrow condition of the highway and bridge in such place, and the unsafe, negligent, and improper manner in which the said highway was permitted to be, remain, and exist, and the narrowness of its position in that location, caused by obstructions allowed to be and remain in the highway and bridge, which defective condition of the highway and bridge was caused by the neglect of the commissioners of highway of said town, and their neglect to properly care for the same and to remove obstructions therefrom as required by law. The evidence in support of these allegations shows that the New York and Albany Post Road runs through a woodland at the point where Casper Creek crosses the same, and the location of the accident here involved; that there is a street surface railroad running along one side of this highway; that the creek runs partially parallel with the roadway near the bridge; and that pipe railings have been erected on either side of the bridge out for a considerable distance along the margin of the creek and the low land adjacent to the stream. At the bridge proper the highway is considerably narrowed down, though it is in evidence that at the narrowest place, and at the point of the accident there is a clear driveway of something over 19 feet from the nearest rail of the street railroad; such driveway being clearly defined by a grass plat running between the railing above described and the driveway as worked and held out to the public for use. Two telephone companies, duly organized and acting under the laws of this state, had erected telephone poles at a distance of about 3 feet from the guard rail, and at distances of 13 and 17 feet, respectively, from the northerly abutment of the bridge; these poles being almost exactly in line with the guard rail or pole at the end of the bridge opposite to the street surface railroad, so that a man driving in the direction of Poughkeepsie and safely crossing the bridge, and

straight ahead, would not come in contact with these poles, and there was a clear space of more than 19 feet between them and the railroad on the opposite side of the way.    The plaintiff was driving from Poughkeepsie at about 11 o'clock in the evening.    It was raining, with thunder and lightning, and a trolley car had stopped on the bridge to take down its trolley on account of the storm.    As the plaintiff approached the bridge in this storm, he saw the lights of an automobile approaching him from the south, or in the opposite direction from which he was going.    The automobile appeared to be bearing down upon him, and he pulled his horse to the side of the highway, as he says, to avoid contact with the machine, and his wagon collided with one of these telephone poles, throwing him out, and producing the injuries for which he seeks damages.    There is some evidence that he actually collided with the automobile, but we accept the view which the jury must have taken of the evidence, and assume the facts to be as stated above.    The question is presented whether the highway commissioners were guilty of negligence in permitting these telephone poles to remain in the highway in the place in which the companies had erected them under their charter from the state.

The telephone companies unquestionably had a right to erect their poles in the highway, subject to the reasonable regulations of the highway commissioners; so the obstructions were not unlawful in the sense that would constitute them a nuisance from the mere fact that they were in the highway.    The evidence shows clearly that originally these poles were set in the grass plat at the side of the traveled way from 1 foot to 20 inches from the traveled portion; that subsequently a rural free delivery box was placed upon one of these poles, and that the delivery man, in driving up to deposit mail, had worn the grass away from in front of these particular poles, but that the grass plat, defining the driveway, was not otherwise disturbed.    The plaintiff had driven over this way for 19 years and presumptively knew all about it; and, the accident having occurred in a thunder storm, the question of the appearances at that exact spot are not very material, except as going to show the situation as it must have appeared to the highway commissioners in the discharge of their duties.    Was it negligent for the commissioners not to have anticipated this accident, and to have guarded against it by compelling the companies to remove these poles? If they were, then there is scarcely a highway commissioner in the state who is not liable for like accidents, for similar situations are to be found along almost every rural highway in the country.    The poles were set well away from the highway as used.    They were in the highway as it approached a bridge, well known to be narrower than the general way.    They were in line with the guard rail as it passed along the end of the bridge.    They were as conspicuous as any sign post or warning of their presence could well have been, and certainly as to one who was familiar with the situation these poles would not have suggested a greater danger than was to be anticipated from the abrupt angle of the guard rail as it turned in toward the narrow portion of the highway over this bridge.    If the accident had occurred exactly at the bridge, and the plaintiff had collided with the angle of the guard rail, it could certainly not have been held that the highway commis-

107 N.Y.S.—49

sioners were guilty of negligence in erecting such a railing, where they had left a perfectly clear way of over 19 feet in a country road; and these telephone poles, erected by corporations duly authorized to use such highways for the purpose, did not, we think, present substantially more of an obstruction to the highway than was presented by this narrowing up of the bridge. It seems to us that, if this situation had been viewed before the accident by men of average intelligence and caution, it would not have occurred to them that the situation was one of danger to the traveler using ordinary care in driving along a rural road, and this is the test of the duty of the highway commissioners. They were not bound to anticipate that the plaintiff, or others would meet a reckless automobilist on a dark and stormy night, and that they would be crowded out of the beaten path. All that they were required to do was to use reasonable care to see that the highways were reasonably safe for travel, and no one would question that this highway was reasonably safe if not told that this accident had happened, and that the plaintiff had suffered injuries. This is not the place for citing authorities. It simply requires the application of the true rule of negligence; and tested by this rule there was no question here for the jury, because, taking the plaintiff's own version, the facts did not constitute actionable negligence as against the highway commissioners. If the telephone poles had not been where they were, it is quite as likely that the plaintiff would have been run against the bridge railing, only 17 feet further along in the direction in which he was traveling, and the proximate cause of the accident was the automobile running the plaintiff out of his course, and not the negligence of the highway commissioners in not anticipating that this might occur.

The judgment and order appealed from should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.