CASE 22—ACTION BY OSCAR ABRAM AGAINST THE CITY
HARRODSBURG.—May 3, 1910.

## City of Harrodsburg v. Abram.

Appeal from Mercer Circuit Court.

M. C. Saufley, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1.  Municipal Corporations—Care of Highways.—It is the duty of a municipality to exercise reasonable care to keep its public highways in a reasonably safe condition for travel, and, if it fails to do so, it is liable for the resulting injuries.
2.  Municipal Corporations—Streets—Injury to Runaway Horse —Liability of City.—Where an unused fire engine had been left standing  by the city near the curb in a street 70 feet in width from curb to curb so that there was left for the use of the traveling public considerable more in width of the highway than was afforded by the average street when entirely unobstructed, and such portion was reasonably safe for ordinary public travel, the city was not liable for injuries to a runaway horse frightened by something for which the city was not responsible and not by the engine, which horse in the daytime collided with the engine while in plain view.

R. W. KEENON and C. E. RANKIN for appellant.

J. F. VANARSDALE for appellee.

Opinion of the Court by Chief Justice Barker— Reversing.

While the appellee was driving his horse along one of the streets of the city of Harrodsburg, the shafts of the vehicle became detached by the breaking of a

bolt, and fell upon the horse, so frightening it that it ran away and collided with an old and unused fire engine standing near the curb upon one of the streets of the city, with the result that the horse was so severely injured that it was necessary to kill it, causing a total loss of its value to the owner. In an action against the city to recover the value of the horse, in damages, based upon the alleged negligence of the municipality in allowing the fire engine to stand in the highway, appellee recovered a judgment in the sum of $200, of which the municipality now complains.

The evidence showed the facts to have been substantially as above stated, and in addition, that the fire engine was about 8 feet wide and stood close to the curbing of the sidewalk, occupying some 8½ or 9 feet of the street, and had stood there several months; that the street, at the point where the accident occurred, was about 70 feet in width from curb to curb; and that, deducting the width occupied by the engine, there was more than 60 feet of highway left free from obstruction and reasonably suited for the use of the traveling public. It may be postulated that the fright of the horse was not caused by the negligence of the owner. The question, then, arises: Is the city liable for the accident which occurred?

Sixty feet is the average width of a public street, including the sidewalk, and very few municipal highways are more than 45 feet in width between the curbing; so that, after deducting the width of the street occupied by the fire engine, the evidence shows without contradiction there was left for the use of the traveling public in width considerably more highway than is afforded by the average street when en-

tirely unobstructed. There was a total failure of evidence showing that the street with the engine standing by the curb was not reasonably safe for the uses of ordinary public travel.

Appellee relies upon the opinion in Fugate v. City of Somerset, 97 Ky. 46, 29 S. W. 970, 16 Ky. Law Rep. 807, to support the judgment; but the circumstances were not the same in that case as here. It appears from the opinion that it was alleged in the petition that the municipality had "placed, or suffered and permitted others to place, large piles of lumber on one of its principal streets, whereby same was made and left in an unsafe and dangerous condition for public travel;" and it also appears that the evidence adduced on behalf of plaintiff substantially proved the allegations of the petition. But it is neither alleged nor proved in the case at bar that the street where the accident occurred was in either an unsafe or dangerous condition; and, even if it had been so alleged, the evidence entirely refutes the supposition. It is well established that it is the duty of municipalities to exercise reasonable care and diligence to keep its public highways in a reasonably safe condition for travel, and that if they fail in this they are liable for all resulting injuries caused by the negligent failure to discharge this important public duty. But it does not follow—and the case of Fugate v. City of Somerset, supra, is not authority for the proposition—that, if the street is in a reasonably safe condition for public travel, the municipality will be liable to the owner of a runaway horse which blindly and unnecessarily dashes into an obstruction left by the city authorities near the curbing. The duty of the municipal authorities is to maintain its highways in a reasonably safe condition for ordinary

public travel; but they are not maintained for the use of runaway horses, and the use of the streets by runaway horses is not, and cannot be, anticipated by the officers of a city. We are of opinion, then, both upon reason and authority, that, if the street is reasonably safe for public travel in the ordinary way, there is no liability for an injury resulting to a runaway horse. The engine was in plain view, and the accident occurred in the daytime, and no one would pretend that, if the owner had allowed his horse, while driving it, to collide with the engine, the city would be liable for the resulting damage; and it is difficult to see why the municipality, having discharged its full duty to the traveling public by affording a reasonably safe highway for ordinary travel, should be liable for a damage which a runaway horse inflicts upon itself by rushing blindly into a vehicle in plain view, upon a part of the street not necessary for the ordinary and reasonable use of the street.

In Kieffer v. Hummelstown Borough, 151 Pa., 304, 24 Atl. 1060, 17 L. R. A. 217, the plaintiff's horse became frightened and ran into a pile of stone left in the highway, where it was injured. The stone occupied some 5 or 6 feet of the width of the roadway, and the space left for travel was some 26 or 27 feet in width. It was held by the Supreme Court of Pennsylvania that the municipality was not liable for the damage to the horse. In the opinion it is said: "In the present case there was no testimony showing, or tending to show, that the accident which caused the plaintiff's injury was either the natural or probable consequence of the presence of the stone pile. The plaintiff himself said he always got along, in passing this place, without any difficulty, on account of the stone pile, and that his horses did not

frighten at the stone pile, but at the shooting. Now the shooting was an extraordinary circumstance for which the borough was in no sense responsible, and against the consequences of which they were not bound to take precautions. As there was abundant space of roadway to accommodate all the passing travel, outside the wall, and no proof whatever that it was in any respect insufficient or defective in failing to provide for all the ordinary travel conducted in the ordinary way, we are of opinion that there was nothing in the testimony upon which a recovery could be based." To the same effect is Schaeffer v. Jackson Township, 150 Pa. 145, 24 Atl. 629, 18 L. R. A. 100, 30 Am. St. Rep. 792.

In the case of Moulton v. Inhabitants of Sanford, 51 Me. 127, there was a bridge over a narrow stream in the town of Sanford, which the plaintiff was crossing with his horse. The animal became frightened at some unusual noise and jumped over the side of the bridge and was injured. The bridge was of sufficient width, and well built; but there was no railing. It was held by the Supreme Court of Maine that the plaintiff had no cause of action against the municipality. The case of Bleil v. Detroit Railway Co., 98 Mich. 228, 57 N. W. 117, arose as follows: The plaintiff's horse was hitched on one of the streets of Detroit. It became frightened by an object falling from an upper window in a building near which it was hitched. The frightened animal broke away from its fastening and ran into a pile of iron material which the street car company had piled along the side of the curb in the street, and was so injured that it had to be killed. Ample room had been left in the street for the passage of vehicles in the ordinary manner while under control of their drivers. The

court said: "The accident was not the natural and probable result of piling the rails in the street close to the curb, but of the tright of the horse. The proximate, and not the remote, cause controls in such cases in this state." In Brown v. Mayor and Councilmen of Glasgow, 57 Mo. 156, it was held that the municipality was not liable for injury to runaway horses caused by a defect in the street, where there was sufficient width of highway for the uses of the usual travel thereon. To the same effect is Johnson v. Philadelphia, 139 Pa. 646, 21 Atl. 316; Moss v. City of Burlington, 60 Iowa, 438, 15 N. W. 267, 46 Am. Rep. 82; Ring v. City of Cohoes, 77 N. Y. 83, 33 Am. Rep. 574.

It may be conceded that there is respectable authority for holding the city liable under the circumstances detailed in this case; but we are of opinion that the great weight of authority, as well as of reason, sustains the theory that, if the city authorities provide and maintain a highway reasonably wide and reasonably safe for public travel in the ordinary way. they have discharged their whole duty to the public, and are not bound to anticipate the extraordinary exigency of runaway horses. Indeed, it would be difficult to provide against frightened animals injuring themselves while running away. If there was an excavation in the street, an ordinary barricade would not stop a frightened horse; nor would the ordinary signals of danger avail. It is considered sufficient if the city authorities give timely and reasonable warning of obstructions in the highway, so that the traveling public may see and avoid the danger created; but, of course, no sort of signals or warnings would avail in the case of a runaway horse, and, therefore, no ordinary provision for the safety of

the traveling public would prevent it from injuring itself. It, therefore, seems to us sound doctrine that the city authorities are not bound to anticipate and provide against so extraordinary a danger as a runaway horse. The rule would, of course, be different if the fright of the horse was due to the negligence of the municipal authorities; and likewise it would be different if the highway where the injury occurred was in a dangerous condition for ordinary travel. In either of these cases the city would be liable, because the negligence of its officers would be the proximate cause of the injury; but, where the municipal authorities are in no wise responsible for the fright of the horse, the city is not responsible in damages for its subsequently injuring itself in unnecessarily running against an obstruction in the highway, if there be ample space for the ordinary use of the traveling public.

The uncontradicted facts herein show that the city was in no wise to blame for the accident to appellee's horse; it had nothing to do with the fright which caused the horse to run away, and, as there was more than sufficient space at the place where the injury occurred for the use of the traveling public, under the rule announced before, there was no liability on the part of the city for the resulting injury. The trial court should have sustained the motion of appellant for a peremptory instruction to the jury to find for it at the close of the testimony.

For these reasons, the judgment is reversed for further procedure consistent with this opinion.