# Fiechter v. City of Corbin et al. (two cases).
# Whitaker v. Southern Bell Telephone & Telegraph Company et al.

(Decided May 8, 1934.)

TYE, SILER, GILLIS & SILER, W. B. EARLY and C. R. LUKER for appellants.

STEPHENS & STEELY, H. H. OWENS and TRABUE, DOOLAN, HELM & HELM for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This action requires a review of a trial before a jury involving the death of one, and the injury of three young men while traveling in an automobile which collided with a telephone pole maintained by the Southern Bell Telephone & Telegraph Company on Main street in the city of Corbin, with the knowledge of the city.

In June, 1932, Charley Whitaker, 29 years old, a mechanic's helper, working for the state highway commission, and John Fiechter, Theodore Fiechter, and Raymond Mooney were traveling in the automobile, Whitaker driving, John Fiechter occupying the seat with him and Theodore Fiechter and Mooney on the rear. Charley Whitaker, at the close of his day's work, left London, Ky., in the automobile at about 5:30 o'clock p. m., and drove it about 15 miles to Corbin. On reaching Depot street in Corbin he met with the Fiechters and Mooney, where he invited them to ride with him. They drove to South Corbin, turned around and returned, stopping at the South Corbin Hotel. It had been raining and was drizzling at the time. They stopped at the South Corbin Hotel; after entering it, within a few minutes, they returned and entered the car to continue their ride. It was between 9 and 9:30 o'clock at night.

"Corbin is a city of the third class with a population of probably 10,000. This street was the main street of the city, and it passed through the business section and principal residential section of the city. In addition to being the main street of the city, it is also a part of a Federal highway called the Dixie Highway, No. U. S. 250-W. It is the only north and south through highway in Eastern Kentucky. This highway is also a part of the Inter-County seat State Highway System. A large volume of through traffic constantly passes over it in addition to the heavy local State, county and city traffic. The automobile involved was traveling north on this way. The accident occurred at the foot of a hill, and at a curve in the highway. * * * An automobile traveling north toward the place of the accident, travels down a rather steep hill toward Moore's Branch. Near the foot of the hill the street curves sharply to the left or west. Just at the point of this curve, the telephone pole was located. Opposite the telephone pole, and in-

tersecting Main Street from the west, was Ninth Street. Ninth Street extended in an easterly direction until it intersected Main Street and terminated at Main Street as a dead-end street. In other words, Ninth Street did not extend at all east of Main Street. The highway was paved with concrete down the hill to a point near where the accident occurred. But a new bridge had been constructed over Moore's Branch just north of the place of the accident, and a fill had been made on either side of the bridge which covered up the original concrete street pavement and the old sidewalks. A new pavement of macadam surfaced with tarvia or similar material had been laid on this fill. A new concrete sidewalk had also been constructed.''

The telephone pole, with which the automobile collided, was set about 6 months before the accident occurred. Before it occupied its place at the time of the accident, it was located about the center of the present sidewalk, when it was moved to where it was at the time of the accident; the sidewalk being reconstructed at the time of the removal of the pole. The occupants of the car were traveling on the right side of the street, going north, and, when they approached the intersection of Ninth and Main streets, an automobile came out of Ninth street, traveling at the rate of 18 or 20 miles an hour, and turned south, and it was within about 12 feet of their car when they first observed it; as it passed their car ''awful close,'' Whitaker attempted to swerve his car to the right in the direction of the telephone pole, and the car struck the pole ''right up with the parking lights;'' ''the front wheel did not touch it;'' ''it passed the pole;'' ''it 'slurped' [side-swiped] it;'' ''the front fender and bumper weren't bent up;'' ''he swerved the car to the right to keep from hitting the other car;'' ''his car swung over, cut back, hit the telephone pole;'' ''if he had not swerved to the right, he would have hit the other car;'' ''he did not get his car out on the sidewalk;'' ''he did not know the telephone pole was at that place;'' ''the impact knocked him out of the car;'' ''all of the occupants were thrown out of the car;'' ''one was killed and three of them injured.'' At the time the car stopped ''it was setting, sloping west, the front part of it, and the other part was kinda across the street.'' The telephone pole was ''knocked toward the sidewalk, about a seven inch space where it had been knocked over;'' ''it had been leaned over by

the impact of the car;" "the whole body was splintered up and the right front tire had a hole in it, which looked like it had been cut." Several witnesses testified the hub of one of the front wheels struck the pole. The street at the point of the accident was 39.4 feet wide from sidewalk to sidewalk; the tarvia portion of it was 20 feet. It was 34 feet and 5 inches from the curve at the place of the telephone pole to the building opposite the telephone pole. There was a space of 7 feet from the tarvia to the pole. There was a drain or ditch about 4 to 6 inches deep and 18 inches wide on the side of the street next to the telephone pole. On the night of the accident it was filled with water. There was a drain-pipe under the street to drain from the west across the highway. The sidewalk was 5 feet wide and 6 inches high. The drain or ditch extended 50 feet south along the edge of the sidewalk toward, and passed, the pole; the drain, of course, more or less filled at the time of rains with the wash from the street. This drain or ditch was constructed at the time the street was constructed for the purpose of carrying the water along the side of the street, and thereafter when it would fill up "the street men shoveled it out once in a while." On the night of the accident, the dirt started down from the sidewalk in "a little rolling ditch from the edge of the sidewalk by the side of the pole where the wheel, the front wheel, went right down into the ditch and the hub cut the pole and the top of the car had mashed the pole up above. There was a cut where it did that."

Three separate actions were instituted in the Whitley circuit court to recover damages of the city, Roe Smith, and the Southern Bell Telephone & Telegraph Company, caused by this accident. Ernest Fiechter, as the administrator of the estate of his son, Theodore Fiechter, sued to recover for the death of Theodore Fiechter; John Fiechter, suing by Ernest Fiechter, his father as his next friend, to recover for his personal injuries; Charley Whitaker, in his own behalf, to recover for his injuries, and damage to his car.

The court on its own motion ordered the three cases tried together. The plaintiffs objected; each requested a separate trial; their separate objection was overruled; and the actions were tried together. At the conclusion of their evidence, the city and the telephone company, separately, requested a peremptory instruction. The court sustained the motions of the telephone company.

and the city, and reserved his ruling on the motion as to Roe Smith. We shall consider and discuss the issues as to the peremptory instruction on the evidence and the reasonable inferences deducible therefrom as interpreted and presented by the Fiechters and Whitaker. In their brief they admit the only question for decision is whether the evidence introduced by them made out a case that should have been submitted to the jury; or, to state it another way, the lower court erred in peremptorily instructing the jury to find verdicts for the city and the telephone company.

To support their contentions, the Fiechters and Whitaker present Kentucky Utilities Co. v. Sapp's Adm'r, 249 Ky. 406, 60 S. W. (2d) 976; City of Providence v. Young, 227 Ky. 690, 13 S. W. (2d) 1022; Raines v. East Tenn. Tel. Co., 150 Ky. 670, 150 S. W. 830; Bevis v. Vanceburg Tel. Co., 121 Ky. 177, 89 S. W. 126; Postal Tel. Cable Co. v. Young, 172 Ky. 576, 189 S. W. 707, and other cases from this and other jurisdictions applying the same principles.

The principles stated in Jackson-Hazard Tel. Co. v. Holliday's Adm'r, 143 Ky. 149, 136 S. W. 135; City of Harrodsburg v. Abram, 138 Ky. 157, 7 S. W. 758, 29 L. R. A. (N. S.) 199; Gulfport, etc., Traction Co. v. Manuel, 123 Miss. 266, 85 So. 308; Greenland v. Des Moines, 206 Iowa, 1298, 221 N. W. 953, are relied upon by the city and the telephone company. They also insist the evidence shows the occupants of the automobile were guilty of contributory negligence, sufficient to authorize the peremptory instruction.

The proven facts must determine which one of the two lines of cases is applicable and controlling.

It is a general rule, without exception, that a "municipal corporation having the exclusive care and control of the streets, is obliged to see that they are kept safe for the passage of persons and property, and to abate all nuisances that might prove dangerous; and if this plain duty is neglected, and any one is injured, it is liable for the damages sustained." Chicago v. Robbins, 2 Black, 418, 422, 17 L. Ed. 298; Washington Gaslight Co. v. Dist. of Columbia, 161 U. S. 316, 16 S. Ct. 564, 40 L. Ed. 712. Also the authorities agree the streets belong to the entire public, from side to side and from end to end, for the purposes for which they are created (Endicott v. Triple-State Natural Gas & Oil Co., 76 S.

W. 516, 25 Ky. Law Rep. 862; Kentucky Utilities Co. v. Sapp's Adm'r, 249 Ky. 406, 60 S. W. [2d] 976; Webster v. Chesapeake & O. R. Co., 105 S. W. 945, 32 Ky. Law Rep. 404; City of Ashland v. Vansant-Kitchen Lbr. Co., 213 Ky. 518, 281 S. W. 503), and not merely for the uses of pedestrians and vehicles. Blashfield, vol. 3, sec. 23, p. 2177, expresses this generally recognized rule thus:

> "Electric wire or telephone poles, erected in or along a highway as incidental to the exercise of a statutory right, if placed and maintained with due regard for the public safety, are not an unlawful obstruction of the highway; and a municipality may set apart a portion of its streets between the traveled way for vehicles and the sidewalk for the erection of poles for electric light wires, telephone wires, trolley wires, and similar purposes, and need not give the whole street to the use of vehicles."

In Gulfport, etc., Traction Co. v. Manuel, 123 Miss. 266, 85 So. 308, 309, the applicable law is accurately stated. We adopt it. It reads:

> "While the street must be used for public purposes, it is not necessary for the entire space to be kept in condition for travel. The city may lawfully use the street for the construction of sewers, for drainage, to lay gas or water pipes, or to erect poles or string wires for electric lights, or to construct a wharf at the terminus of the streets, or convert a promenade into wharves, or set apart for a boulevard a portion of a street not devoted to business purposes. 28 Cyc. 853. It is permissible for the city to set apart a portion of the street for the erection of poles to support light, telephone, and trolley wires. The electric street car system is a convenience and necessity which serves the public interest, and it is not negligence to erect poles between the sidewalk and the traveled parts of the street. * * * The extent of the obligation of the city in working its streets is to keep them reasonably safe for general use. It is not required to have them in such condition as to insure the safety of reckless drivers. Walker v. Vicksburg, 71 Miss. 899, 15 So. 132; Butler v. Oxford, 69 Miss. 618, 13 So. 626; Nesbitt v. Greenville, 69 Miss. 22, 10 So. 452, 30 Am. St. Rep. 521. A user of vehicles is not entitled to the entire street

from property line to property line. The street not only serves the needs of the traveling public, but serves also the purpose of furnishing the public the conveniences above set out.''

For an exemplification of the same principles, see Stern v. International R. Co. et al., 220 N. Y. 284, 115 N. E. 759, 2 A. L. R. 487; Lawson v. City of New York, 216 App. Div. 537, 215 N. Y. S. 517; Shannon v. City of Council Bluffs, 194 Iowa, 1294, 190 N. W. 951; City of Fairbury v. Barnes, 228 Ill. App. 389; Clinkenbeard v. City of St. Joseph, 321 Mo. 71, 10 S. W. (2d) 54, 61 A. L. R. 242; Greenland v. City of Des Moines, 206 Iowa, 1298, 221 N. W. 953; Bailey v. Bell Tel. Co., 147 App. Div. 224, 131 N. Y. S. 1000; Mississippi Power Co. v. Sellers, 160 Miss. 512, 133 So. 594; Jackson-Hazard Tel. Co. v. Holliday's Adm'r, 143 Ky. 149, 136 S. W. 135, 137; and Bevis v. Vanceburg Tel. Co., 121 Ky. 177, 89 S. W. 126, 127.

There is no disagreement of the authorities that a public utility company lawfully maintaining a pole in or near a public highway is not liable for the damage to a person or property resulting from a vehicle striking such pole, unless it is erected on the traveled portion of the highway or in such close proximity thereto as to constitute an obstruction dangerous to any one properly using the highway and the location of the pole is the proximate cause of the collision.

Illustrative of the domestic cases where the pole is located on or in too close a proximity to the traveled portion of the highway, see Postal Tel. Cable Co. v. Young, 172 Ky. 576, 189 S. W. 707, Louisville Home Tel. Co. v. Gasper, 123 Ky. 128, 93 S. W. 1057, 9 L. R. A. (N. S.) 548, Kentucky Utilities Co. v. Sapp's Adm'r, 249 Ky. 406, 60 S. W. (2d) 976; and of those of foreign jurisdiction, examine Phelps v. Board of Com'rs of Howard County, 117 Md. 175, 82 A. 1058; Coan v. Public Service Elec. & Gas Co., 105 N. J. Law, 501, 142 A. 665; Watts v. So. Bell Tel. & Teleg. Co., 100 Va. 45, 40 S. E. 107; Riley v. New England Tel. & Teleg. Co., 184 Mass. 150, 68 N. E. 17; Scalet v. Bell Tel. Co., 291 Pa. 451, 140 A. 141; Wolfe v. Erie Teleg. & Tel. Co. (C. C.) 33 F. 320.

In the Gasper Case a guy wire attached to a pole of the telephone company came down into an alley at an angle of about 45 degrees. On account of its color, it

was invisible. Gasper was driving a wagon rapidly through the alley when the hub of the rear wheel struck it, and ran up it, causing the wagon to turn over, injuring him.

In the Young Case a horse attached to a buggy in which the plaintiff was riding became frightened, and, in attempting to pass another vehicle, collided with a telephone pole along the highway, and the plaintiff was thereby injured. The road, at the place of the accident, was 29 feet from fence to fence; the traveled part of it was 14 feet wide, and the metal on the side where the pole was located was 5 feet and 7 inches from the fence; the pole was located 4½ feet from the fence and 14 inches from the shoulder of the pike, or 12 or 16 inches from the edge of the metal surface.

In the Sapp Case the black top surface of the road was 18 feet wide with shoulders covered with gravel, and the latter was used by all kinds of vehicles traveling the highway. The pole stood close to the outer edge of the metal shoulder. The evidence varied as to the distance of the pole from the shoulder. Some witnesses placed it at 4 inches, and others stated it was in and on the traveled portion of the highway. We held in these cases the defendants were not entitled to a peremptory instruction. The facts therein are not similar or comparable to those in the present case.

A city is not an insurer of the safety of its streets; therefore it is not liable for consequences of an accident to one using them, unless they are not reasonably safe, and this condition was the result of a failure of the municipality to exercise ordinary care so to maintain them. Tudor v. City of Louisville et al., 172 Ky. 429, 189 S. W. 456.

Whatever duty rested upon the city of Corbin, no further duty was upon it than to exercise ordinary care to adopt the best plan possible for the use of the streets by public utility companies, including the Southern Bell Telephone & Telegraph Company, and select places for the location of their poles, leaving a portion of the streets reasonably sufficient and proper for the use of the traveling public, and it was the duty, in this case, of the telephone company to locate the pole involved at the place selected, according to the plan adopted by the city. Uppington v. City of New York, 165 N. Y. 222-228, 59 N. E. 91, 53 L. R. A. 550; Kelsey v. City of New York,

123 App. Div. 381, 107 N. Y. S. 1089. It has never been ruled that a telephone pole erected lawfully on ground laid out or established by the authorities as a public road or street is a nuisance, unless it was erected in the traveled part of the road or street, usually used for public travel, or so close thereto, as to interfere with or obstruct the use of the road or street by the traveling public. This doctrine was aptly stated in the Bevis Case and approved in the Holliday Case. It was said in the Bevis Case:

> "We may take judicial notice that poles must be set near the side of the street or road, and that they are generally outside of the curb or ditch line, and therefore necessarily in line with the trees."

In the Holliday Case it is written:

> "It is a matter of common knowledge that with few exceptions all the public roads in the state that run through cultivated farm lands are fenced on each side and that on nearly all of these roads there are telephone poles set along the edge of the road between the fence and the traveled part of the road. But it has never been ruled that a pole erected lawfully on ground laid out or established by the authorities as a public road is a nuisance, unless it was erected in the traveled part of the road or that part of the road usually used by the public or so close thereto as to interfere with or obstruct the use of the road by the traveling public."

City of Harrodsburg v. Abram, 138 Ky. 157, 127 S. W. 758, 29 L. R. A. (N. S.) 199; Southern Bell Tel. & Teleg. Co. v. Edwards, 253 Ky. 727, 70 S. W. (2d) 1. To the same effect see Scofield v. Town of Poughkeepsie, 122 App. Div. 868, 107 N. Y. S. 767; Wyatt v. Chesapeake & Potomac Tel. Co., 158 Va. 470, 163 S. E. 370, 82 A. L. R. 386.

True it is some of the witnesses testified the space between the tarvia was suitable for vehicular travel and there were signs of its use. It is equally as true the width of the street, of the tarvia thereon, of the space between the latter and the pole, and the existence of the drain or ditch, beginning at least 50 feet south of the pole, passing between the pole and the above space, are not disputed.

In planning by the city for the occupancy of a por-

tion of the street by the poles of public utilities, and the telephone company in placing same in accordance with the requirements of the city, they did so for one of the purposes for which the street was created. The only restriction on their right to place the pole involved for its purposes was not to erect it within the space laid out and established for the use of the traveling public, or not so close thereto as to interfere with or obstruct the traveling public's use thereof.

To hold otherwise would be equivalent to denying the city jurisdiction of its streets, and depriving public utilities companies of all right to occupy any portion of the street for the benefit of the general public, and conferring upon those who use the streets for the purposes of pedestrians and vehicles, not only the predominant, but the exclusive use thereof, "from side to side and from end to end."

The rights of the pedestrian and the vehicular traveler are not exclusive, but at all times relative and subject to the common-law doctrine sic utere tuo ut alienum laedes.

The city, in authorizing and permitting the setting of the pole in controversy, and the telephone company in the setting it between the sidewalk and the drain or ditch, violated no statute, and deprived the traveling public of no rights, though subsequent rains washed sand and gravel into and filled up the drain or ditch, and members of the public occasionally passed over same in vehicles. The latter did not convert their legally performed acts into actionable negligence. The pole still remained outside of that portion of the highway laid out and established for travel by the public, and did not interfere with or obstruct the same, in the sense in which these terms are used in such cases.

The telephone pole was merely an accompanying, innocuous condition which gave rise to the occasion by which injuries to the occupants of vehicles were made possible when the vehicles left that portion of the highway prepared for vehicular travel, and entered and passed over the ditch to the telephone pole.

The courts generally agree that "where two distinct causes, unrelated in operation, contribute to an injury, one of them being a direct cause and the other merely furnishing the condition or giving rise to the occasion

by which the injury was made possible, the former will alone be regarded as responsible for the result.'' See 62 C. J. sec. 40, p. 1127. This principle was recognized and applied by this court in Trauth v. Mackin Council, 179 Ky. 137, 200 S. W. 338; Burton v. Cumberland Tel. & Teleg. Co. (Ky.) 118 S. W. 287. To the same effect see Home Oil & Gas Co. v. Dabney, 79 Kan. 820, 102 P. 488; Eberhardt v. Glasgow Mut. Tel. Ass'n, 91 Kan. 763, 139 P. 416; Stone v. Boston & Albany R. Co., 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794; Orton v. Pennsylvania R. Co. (C. C. A.) 7 F. (2d) 36; Missouri Pac. R. Co. v. Columbia, 65 Kan. 390, 69 P. 338, 340, 58 L. R. ·A. 399.

In Orton v. Pennsylvania R. Co. the plaintiff was injured by the collision of an automobile in which he was riding, at night, with cars of the defendant railway company standing upon a highway crossing. The road was straight, the night was dark, but not rainy or foggy, and the lights of the automobile were burning brightly. It was held the defendant's act was merely a condition and in no sense a concurring, proximate cause of the injury.

In Missouri Pac. R. Co. v. Columbia the court used this language in stating the general rule:

"While one is responsible for such consequences of his fault as are natural and probable, and might, therefore, be foreseen by ordinary forecast, if his fault happened to concur with something extraordinary, and therefore not likely to be foreseen, he will not be answerable for the extraordinary result. Schaeffer v. Jackson Twp., 150 Pa. 145, 24 A. 629, 18 L. R. A. 100, 30 Am. St. Rep. 792; Milwaukee & St. P. R. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Hubbell v. Yonkers, 104 N. Y. 434, 58 Am. Rep. 522, 10 N. E. 858; Washington v. Baltimore & O. R. Co., 17 W. Va. 190; Block v. Milwaukee St. R. Co., 89 Wis. 371, 61 N. W. 1101, 27 L. R. A. 365, 46 Am. St. Rep. 849; Farmers' High Line Canal & R. Co. v. Westlake, 23 Colo. 26, 46 P. 134; Lewis v. Flint & P. M. R. Co., 54 Mich. 55, 52 Am. Rep. 790, 19 N. W. 744; Daniels v. Ballantine, 23 Ohio St. 532, 13 Am. Rep. 264; Henry v. St. Louis, K. C. & N. R. Co., 76 Mo. 288, 43 Am. Rep. 762. In cases of this character, where two distinct, successive causes, unrelated in operation, to some extent contribute to

an injury, it is settled, where there is an intervening and direct cause, a prior and remote cause cannot be made the basis for recovery of damages, if such prior cause did no more than furnish the condition or give rise to the occasion by which the injury was made possible. And it seems to be sound in principle and well settled by authority, where it is admitted or found that two distinct, successive causes, unrelated in their operation, conjoin to produce a given injury, one of them must be the proximate and the other the remote cause of the injury, and the court, in passing upon the facts as found or admitted to exist, must regard the proximate as the efficient and consequent cause, and disregard the remote cause.''

It is insisted that the facts and circumstances surrounding the accident in which the Fiechters and Whitaker sustained their injuries show they were placed in danger and acted in an emergency to save themselves, and were entitled to do as they did, and that, while acting in the emergency, the pole of the telephone company was the primary cause of their injury.

The presence of the pole on the margin of the street was observable by a traveler going north, the direction in which they were traveling; the street was lighted by an adequate street light at the point of the accident; the intersection of Ninth with Main street and persons traveling on either could be seen a distance of 200 or 300 feet by those traveling north on Main street; the windshield and the windows and doors of the automobile in which they were traveling were covered with water from the rainfall; the Fiechters and Whitaker were traveling at the rate of about 15 miles an hour in the main business and residential section of the city. They were suddenly confronted by a fast-moving, approaching automobile, coming out of Ninth street, the presence of which they did not discover until it was within about 12 feet of them. Their vision was materially affected, if not destroyed, by the water on the windshield, the windows and doors of the car, and, on discovering the sudden approach of the rapidly moving automobile, Whitaker swerved the car to the right, leaving that portion of the highway laid out and established for vehicular travel. The Fiechters knew of, or could have discovered by the exercise of ordinary care, the presence of the water on the windshield, windows, and doors

of the car, and the impairment of their vision, the presence of the telephone pole, and the rate of speed at which Whitaker was driving in time to have warned him thereof, if he had not already discovered the same, before the origination of the emergency, which suddenly confronted them and Whitaker.

These facts bring the case within the rule, a person may not, himself, be guilty of negligence and thereby create an emergency and then be permitted to say that after the emergency arose he did all he reasonably could with the means' at his command to avoid the injury and thus escape the consequences of his own negligence (Knapp v. Gibbs, 211 Ky. 278, 277 S. W. 259, and authorities cited; Louisville Taxicab & Transfer Co. v. Reno, 237 Ky. 452, 35 S. W. (2d) 902) and at the same time cast the responsibility upon an accompanying condition which was merely passive and took no part in creating the emergency. It is our opinion, considering the developed facts, the peremptory instruction was correctly given.

The argument is made that the telephone company herein was a trespasser in placing its pole anywhere within the ambit of the street because it was operating without a franchise.

We have carefully reviewed the evidence adduced relating to this question. Without reproducing it, we entertain no doubt as to its legal right to operate in the city. We do not deem it incumbent upon us to discuss other questions debated in the briefs.

Wherefore the judgment is affirmed.

The whole court sitting, except Judge Clay.