JEREMIAH RILEY *vs.* NEW ENGLAND TELEPHONE AND
TELEGRAPH COMPANY.

Suffolk.    March 5, 1903. — September 3, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Telegraph Companies.    Proximate Cause.*

Under Pub. Sts. c. 109, § 12, (R. L. c. 122, § 15,) a telegraph company is liable to a
traveller on the highway who in the exercise of due care is injured by a post
erected and maintained by the company in accordance with a municipal license
and without negligence. LATHROP, J. dissenting.

In an action under Pub. Sts. c. 109, § 12, against a telegraph company for personal
injuries, it appeared, that the plaintiff was thrown from a provision wagon by
its coming in contact with a telegraph pole of the defendant set inside the curb-
stone of a sidewalk, that beside the pole was a standpipe for filling watering
carts, the dripping from which had caused a depression of small area two or
three inches in depth in the cobblestone pavement near the curbstone; that the
forward wheel of the plaintiff's wagon fell into this hollow, whereupon the body
of the wagon lurched toward the pole and a portion of the wagon striking the
pole the plaintiff was thrown out and injured. The pole was erected in accord-
ance with a municipal license. *Held*, that under the statute the defendant was
liable, if the plaintiff was in the exercise of due care, although the pole was
maintained in accordance with the license and the defendant was not negligent.
LATHROP, J. dissenting on the ground that the depression in the highway and
not the pole was the proximate cause of the injury, as well as upon the con-
struction of the statute.

TORT, under Pub. Sts. c. 109, § 12, (R. L. c. 122, § 15,) for
personal injuries against a corporation authorized to construct
and maintain telephone and telegraph lines.    Writ dated Feb-
ruary 1, 1900.

At the trial in the Superior Court before *Holmes*, J., the jury
returned a verdict for the defendant; and the plaintiff alleged
exceptions.

The case was argued at the bar in March, 1903, before *Knowl-
ton, C. J., Lathrop, Barker, Hammond, & Braley*, JJ., and after-
wards was submitted on briefs to all the justices.

*C. E. Washburn*, (*A. S. Hutchinson* with him,) for the
plaintiff.

*E. K. Hall*, for the defendant.

KNOWLTON, C. J.   The plaintiff was driving along Bridge Street in Cambridge, upon a market wagon, the hubs of whose wheels projected six inches beyond the rims and spokes. The body of the wagon had wings extending laterally as far as the hubs.   A telegraph pole of the defendant was set close to the curbstone on the inside and it leaned a little towards the centre of the street.   A standpipe used to fill watering carts stood beside the telegraph pole, and the dripping from it caused a sinking or depression in the cobblestone pavement, small in area, but two or three inches in depth near the curbstone and opposite the telegraph pole.   As the right forward wheel of the plaintiff's wagon fell into this hollow, the body of the wagon lurched to the right toward the pole, so that the wing struck the pole, and the collision threw the plaintiff out and injured him.   The pole was erected in accordance with a license granted by the board of aldermen, which required the defendant to maintain it as nearly perpendicular as practicable.   There was a question whether its leaning was a departure from the requirements of the license.

The plaintiff asked the judge to instruct the jury as follows : " The defendant is liable to the plaintiff in this action if the latter, while travelling on the public highway, and in the exercise of due care, was injured by reason of a telegraph pole belonging to the defendant, although said pole was erected and maintained by the defendant in accordance with the license granted by the board of aldermen of the city of Cambridge."   The judge refused to give the instruction requested and gave the jury this instruction : " If you find that the pole was erected and maintained in accordance with the specifications of the municipal officers, and that there was no negligence on the part of the defendant in its construction or maintenance of the pole, then the plaintiff cannot recover, even if in the exercise of due care, in the absence of any direction by the municipal officers to alter the location or construction of said pole."   The exceptions to the refusal and to the instruction, bring us to the consideration of the statute under which the pole was erected.   The St. 1851, c. 247, § 2, is as follows : " Whenever injury shall be done to any person, or to the buildings or other property of any person or corporation, by the posts, wires, or other apparatus of any telegraphic line, the company or individual, being proprietor of the

same, shall be held responsible in damages to the person or corporation so injured." The St. 1859, c. 260, which was doubtless enacted to change the law stated in *Young* v. *Yarmouth*, 9 Gray, 386, provides that " Towns which may be otherwise liable in damages to any person for injury to his person or property, occasioned by telegraphic posts or other fixtures erected on highways or town ways, shall not be discharged from such liability " by reason of anything contained in the act authorizing the erection of such posts, and makes the companies erecting the posts or fixtures liable to reimburse and repay to towns the full amount of damages and costs recovered by any party injured. These two statutes were combined in the Gen. Sts. c. 64, § 11, with a slight change, and re-enacted in Pub. Sts. c. 109, § 12, and again re-enacted with only verbal changes in the R. L. c. 122, § 15.

The first of these two statutes creates a liability without any reference to negligence. The Legislature seems to have recognized that the erection of the poles and fixtures in public ways, would create obstructions which might interfere to some extent with the use of the public streets and increase the liability of travellers to accidents. Such obstructions, whether placed in a sidewalk or in a part of a street designed for use by vehicles, being there when the streets are lighted and when they are in darkness, and in every variety of possible conditions, subject persons in the exercise of due care to risks which otherwise would not exist. While the Legislature saw fit to authorize the use of the streets for telegraph lines, it provided at the same time that the telegraph company should be liable for damages to all persons injured in person or property by these erections.

Doubtless the fact that electricity is a subtle and dangerous agency, which was less understood in 1851 when this statute was enacted than it is now, was an added reason for creating this legal liability without regard to negligence. Wires and other apparatus, as possible causes of injury, are treated by the statute like the posts. It might be difficult to prove, in case of an injury by a transmitter of electricity, whether the injury was caused by negligence or by pure accident. The statute indicates an intention on the part of the Legislature, that these erections in the street, which in many places would constitute a public nuisance if not authorized by the statute, should be permitted only upon

condition that those who use them to their own profit should make compensation for damages caused by them.

Both the principle involved and the statutory declaration of liability are substantially the same as appear in R. L. c. 102, § 146, which declares that " The owner or keeper of a dog shall be liable in an action of tort to a person injured by it in double the amount of damages sustained by him." The keeping of dogs is authorized by law, and in many cases is meritorious. Usually, in individual cases, it is not attended with obvious danger, but the fact that it materially increases the risk of injury to innocent persons, is a reason for making dog owners liable for injuries caused by their dogs, even though the owners are free from fault. We are, therefore, of opinion that this instruction should have been given.

The second instruction requested, that " contributory negligence on the part of the plaintiff is no defence to this action unless so gross as to amount to fraud," was rightly refused. In this respect the statute is like that last quoted. The statute as to dogs is silent in regard to care on the part of the injured person. But owners of dogs are not insurers against injuries inflicted by them upon persons whose negligence contributes to the injury. *Munn* v. *Reed*, 4 Allen, 431. *Plumley* v. *Birge*, 124 Mass. 57. To make a defendant, under this statute, an insurer against injuries to persons whose own fault is one of the causes of the injury imposes too great a liability upon the corporation. It would be contrary to the usual rule of liability in actions of tort, where the cause of the liability is not more culpable than negligence. The language of this statute does not indicate that this absolute liability to persons injured, applies to persons who, by their own conduct, would be precluded from recovery against a defendant in an action for negligence.

The R. L. c. 111, § 270, in relation to the liability of railroad companies for damages by fires kindled by sparks from locomotive engines, deals with a different kind of subject and it has been construed a little more strictly. *Bowen* v. *Boston & Albany Railroad*, 179 Mass. 524. Railroad companies are held accountable for fires set by their engines under ordinary conditions. The condition of the property does not ordinarily contribute as an active agent to the kindling of the fire. It is a passive state

which was contemplated when the statute was passed. That statute leaves the owner entitled to his remedy unless guilty of gross negligence which is culpable.

The instructions in regard to the duty of the plaintiff in reference to care, and as to what constitutes due care of a plaintiff in a case like this, were correct and sufficient. The third request for instructions was rightly refused.

*Exceptions sustained.*

LATHROP, J. I am unable to agree with the opinion of the majority of the court. If the only question involved were that of the construction of a statute I should not write a dissenting opinion, but as there are other questions involved, which I have pointed out to my brethren, but to which no answer is made in the opinion, I feel justified in discussing the whole case.

I understand that while there was evidence that the pole leaned a little, the instruction asked for assumes there was no fault on the part of the defendant; and that the opinion of the majority proceeds upon the theory that the pole was properly placed and maintained. While this pole was next to the inner edge of the curbstone, its base, as appears by the bill of exceptions, was nine inches from the outer edge of the curbstone, and so it is manifest that if the wagon had remained in an upright position, and the pole had been upright no part of the wagon could have struck the pole. As is stated in the opinion of the majority, there was a defect in the street into which one of the fore wheels went, and this caused the wagon to lurch and to throw the top of the wagon against the post, throwing the plaintiff out and causing the injury. It seems to me very clear that the defect in the highway, and not the post was the proximate cause of the injury. The majority of the court liken the statute under consideration to the dog law, but there is a dog case precisely in point. In *Sherman* v. *Favour*, 1 Allen, 191, a man was driving along a highway in a chaise drawn by a horse. A dog attacked the horse, and the horse was frightened. While the driver was attempting to guide the horse, one of the reins broke, and the chaise struck against a post on the side of the way and was damaged. The attack of the dog was held to be the proximate cause of the injury. I venture to think that in the present

case the proximate cause of the injury was the defect in the street and not the pole.

The dog law was first enacted by the St. of 1791, c. 38, § 4, and applies to a case where a dog assaults a person, and not to a case where a dog is the passive cause of the injury. Thus in *Sherman* v. *Favour*, 1 Allen, 191, it was said by Chief Justice Bigelow: " We do not mean to say that any liability would be incurred for an accident or injury caused by the mere presence or passing of a dog, when no act is done or attack made by him; as, for instance, where a horse is frightened merely by seeing a dog lying or running in the street. In such case, the dog would be only the passive cause of the injury."

If however these questions are not worthy of consideration, it is necessary to consider the construction of the statute. In the first place it is to be noticed that it applies only to poles of a telegraph company, and not to those of a telephone or of an electric light or power company. See R. L. c. 122. And it has been held that an electric light company is not liable irrespective of negligence. *Hector* v. *Boston Electric Light Co.* 161 Mass. 558. *Illingsworth* v. *Boston Electric Light Co.* 161 Mass. 583. *Griffin* v. *United Electric Light Co.* 164 Mass. 492. *Reagan* v. *Boston Electric Light Co.* 167 Mass. 406. *Hector* v. *Boston Electric Light Co.* 174 Mass. 212.

If therefore the opinion of the majority is right our statutes impose a liability on a telegraph company for the mere keeping of a licensed pole on a highway, while no such liability is imposed on a company owning similar poles and using a far more dangerous current of electricity.

It seems to me that the view taken by the majority of the court is one which ought not to be reached. The question is not a new one, though it has not before been definitely decided. It was considered by Mr. Justice Hoar in *Commonwealth* v. *Boston*, 97 Mass. 555, 558, a case arising under the Gen. Sts. c. 64, § 11, which is the same as the one before us. He uses this language: " Whether the eleventh section is to be construed as giving or preserving a right of action, where the injury is caused by the mere placing of the poles at the places appointed for them, may perhaps admit of doubt. The liability of the poles to decay and fall, or to lean over, and of the wires to become displaced, would

give the provision effect, if the right of the original location of them were regarded as unquestionable."

These remarks of Mr. Justice Hoar seem to me to be the true rule in the case. The opinion of the majority holds that the plaintiff must be in the exercise of due care. This is reading the law of negligence into the statute, so far as the plaintiff is concerned. It seems to me just as reasonable to read the same law into the statute as to the defendant.

It will be curious to see how far the majority of the court will carry its interpretation of the statute. It frequently happens at the present time that an automobile gets beyond the control of the person in charge, and plunges into a telegraph pole outside the travelled part of the way, and the automobile or the person in charge is injured. Is the owner of the pole to be held liable? Again, an open trolley car leaves the track owing to a defective rail, and a passenger is thrown against a telegraph pole. Is the owner thereof liable?

I cannot think that the Legislature intended any such consequence to result, from the language used in the statute. Statutes are to be construed reasonably, and it seems to me that the construction put by the majority of the court tends to most unreasonable results.