IRENE VIGEANT *vs.* POSTAL TELEGRAPH CABLE COMPANY.

· Middlesex.   November 19, 1927.— June 30, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Telegraph Company. Constitutional Law,* Equal protection of the law; Law, valid when enacted, rendered invalid through later changed circumstances. *Evidence,* Judicial notice. *Stare Decisis.*

This court takes judicial notice of the facts within common knowledge that electric light, heat and power companies and telephone companies and street railway companies maintain poles, wires and apparatus within, upon and under public ways in the Commonwealth and that all such companies maintain poles bearing wires charged with electricity in varying degree, some carrying a much more powerful current than do the wires of a telegraph company.

G. L. c. 166, § 42, valid and constitutional when enacted in 1851 and at a time when the telegraph was the only known instrumentality for transmitting intelligence by electricity or for transmitting electricity at all, since the advent of electric light, heat and power, telephone, and street railway companies, has become so unequal and unreasonable in its classification and operation as to be unconstitutional and void.

A corporation may invoke the guaranty of equal protection of the laws assured by the Fourteenth Amendment to the Constitution of the United States.

Questions which merely lurk in a record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.

TORT. Writ in the District Court of Lowell dated October 22, 1925.

Material facts at the trial in the District Court are stated in the opinion. The judge found for the plaintiff in the sum of $1,500 and reported the action to the Appellate Division for the Northern District. The report was ordered dismissed. The defendant appealed.

*G. K. Gardner,* (*R. A. Cutter* with him,) for the defendant.

*F. S. Harvey,* for the plaintiff, submitted a brief.

RUGG, C.J.   This is an action of tort whereby the plaintiff seeks to recover compensation for personal injuries resulting from the collision of an automobile, in which she was riding, with a pole owned by the defendant. Both the

plaintiff and the driver of the automobile in which she was riding were found to have been in the exercise of due care. No contention was made in the trial court or in the argument at the bar of this court that the defendant was negligent. Its liability was found and is now conceded to rest exclusively on G. L. c. 166, § 42. The pertinent words of that section are, "A telegraph company shall be liable in damages to the person injured in his person or property by the poles, wires or other apparatus of such company." That statutory mandate imposes an absolute liability on a telegraph company irrespective of negligence. See *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 381, 382, and cases cited; *New York Central Railroad* v. *White*, 243 U. S. 188, 198, 204, and cases cited; *Opinion of the Justices*, 251 Mass. 569, 601.

The single contention here urged in behalf of the defendant is that the statute deprives it of the equal protection of the laws. That contention is based on the ground that the statute subjects the defendant and other telegraph companies to unconditional liability, regardless of their due care in the erection and maintenance of their poles, wires or other apparatus and without reference to their fault, and that no such liability is imposed upon telephone companies, or electric light or power companies, or street railway companies, and that the liability of such other companies is left to be ascertained solely by reference to the common law. This, it is argued, creates undue discrimination against telegraph companies and unequal favoritism toward other companies of like general nature.

The court takes judicial notice of the facts within common knowledge that electric light, heat and power companies and telephone companies and street railway companies maintain poles, wires and apparatus within, upon and under public ways in the Commonwealth. All such companies maintain poles bearing wires charged with electricity in varying degree, some carrying a much more powerful current than do the wires of a telegraph company. *State* v. *Consumers Power Co.* 119 Minn. 225, 232. *Commonwealth* v. *Pear*, 183 Mass. 242, 245. *Delano* v. *Smith*, 206 Mass. 365, 371. *Roosen* v. *Peter Bent Brigham Hospital*, 235 Mass. 66, 70.

*Foley* v. *Boston & Maine Railroad*, 193 Mass. 332, 334. *Greene* v. *Mayor of Fitchburg*, 219 Mass. 121, 125. *Chartier* v. *Barre Wool Combing Co. Ltd.* 229 Mass. 153, 156. *MacGilvray* v. *Boston Elevated Railway*, 229 Mass. 65, 67. *Boston* v. *Treasurer & Receiver General*, 237 Mass. 403, 416. *Barrows* v. *Farnum's Stage Lines, Inc.* 254 Mass. 240, 247. *Lincoln Gas & Electric Light Co.* v. *Lincoln*, 250 U. S. 256, 268. *Block* v. *Hirsh*, 256 U. S. 135, 154. *Newton* v. *Consolidated Gas Co. of New York*, 258 U. S. 165, 174. *Chastleton Corp.* v. *Sinclair*, 264 U. S. 543, 548, 549.

Such other companies enjoy substantially the same privileges in the public ways as do telegraph companies. G. L. c. 166, §§ 21–43, both inclusive. Telegraph companies alone are made liable without fault for injuries resulting to others from their structures under § 42, here in question. All other such companies are excluded from its operation. It has been held that said § 42 is not applicable to electric light companies. *Hector* v. *Boston Electric Light Co.* 161 Mass. 558, 570. *Illingsworth* v. *Boston Electric Light Co.* 161 Mass. 583, 585. See as to a street railway, *Curran* v. *Boston Elevated Railway*, 249 Mass. 55, 58. The question does not appear to have arisen as to telephone companies or specifically as to electric heat or power companies.

The subject of equal protection of the laws has been considered somewhat in our own decisions. No case has arisen in this jurisdiction very closely resembling in its facts the case at bar. In most, although not in all, of our cases the reasonable classification permissible to the legislative department of government has been upheld. *Commonwealth* v. *Libbey*, 216 Mass. 356, 358. *Ashley* v. *Three Justices of the Superior Court*, 228 Mass. 63, 78. *Holcombe* v. *Creamer*, 231 Mass. 99, 104–107. *Commonwealth* v. *Titcomb*, 229 Mass. 14. *Massachusetts General Hospital* v. *Belmont*, 233 Mass. 190, 201–205. *Opinion of the Justices*, 207 Mass. 601. *Opinion of the Justices*, 211 Mass. 618. *Opinion of the Justices*, 251 Mass. 569, 600, 601. *Bogni* v. *Perotti*, 224 Mass. 152, 156, 157. *Commissioner of Corporations & Taxation* v. *Coöperative League of America*, 246 Mass. 235, 239. Discussions have been much more frequent and com-

prehensive in the Supreme Court of the United States. To these resort naturally is had for enlightenment as to the meaning of this constitutional guaranty and its application to differing states of fact. In *Yick Wo* v. *Hopkins*, 118 U. S. 356, 369, it was said concerning the equality clause of the Fourteenth Amendment to the Constitution of the United States, that it is universal in its "application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality; and the equal protection of the laws is a pledge of the protection of equal laws." In *Atchison, Topeka & Santa Fé Railway* v. *Vosburg*, 238 U. S. 56, 59, are these words: The constitutional guaranty of equal protection of the laws does "not prevent classification, but does require that classification shall be reasonable, not arbitrary, and that it shall rest upon distinctions having a fair and substantial relation to the object sought to be accomplished by the legislation." The principle was stated in *Barrett* v. *Indiana*, 229 U. S. 26, 30, as follows: "The legislature is permitted to make a reasonable classification and before a court can interfere with the exercise of its judgment it must be able to say 'that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched.' This was the test laid down in *Missouri, Kansas & Texas Ry. Co.* v. *May*, 194 U. S. 267," 269. In *Terrace* v. *Thompson*, 263 U. S. 197, 218, occurs this language: "That clause [the equal protection clause] secures equal protection to all in the enjoyment of their rights under like circumstances." In *Lindsley* v. *Natural Carbonic Gas Co.* 220 U. S. 61, at pages 78, 79, where a statute was upheld, it was said with reference to equal protection of the laws: "The rules by which this contention must be tested, as is shown by repeated decisions of this court, are these: 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend

against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality.   3.  When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.   4. One who assails the classification in such law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.   *Bachtel* v. *Wilson,* 204 U. S. 36, 41; *Louisville & Nashville R. R. Co.* v. *Melton,* 218 U. S. 36; *Ozan Lumber Co.* v. *Union County Bank,* 207 U. S. 251, 256; *Munn* v. *Illinois,* 94 U. S. 113, 132; *Henderson Bridge Co.* v. *Henderson City,* 173 U. S. 592, 615." One of the most elaborate statements is found in *Truax* v. *Corrigan,* 257 U. S. 312, at pages 332, 333, "The guaranty was aimed at undue favor and individual or class privilege, on the one hand, and at hostile discrimination or the oppression of inequality, on the other.  It sought an equality of treatment of all persons, even though all enjoyed the protection of due process.  Mr. Justice Field, delivering the opinion of this court in *Barbier* v. *Connolly,* 113 U. S. 27, 32, of the equality clause, said — 'Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment.'  In *Hayes* v. *Missouri,* 120 U. S. 68, the court speaking through the same Justice said the Fourteenth Amendment 'does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate.  It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed.'  Thus the guaranty was intended to secure equality of protection not only for all but against all similarly situated.  Indeed, protection is not protection unless it does so.  Immunity granted to a class, however limited, having the effect to deprive another class, however limited, of a personal or

property right, is just as clearly a denial of equal protection of the laws to the latter class as if the immunity were in favor of, or the deprivation of right permitted worked against a larger class;" and at pages 337, 338, "Classification must be reasonable.   As was said in *Gulf, Colorado & Santa Fé Ry. Co.* v. *Ellis,* 165 U. S. 155, classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without such basis.'   As was said in *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 293: 'The rule [i. e., of the equality clause] is not a substitute for municipal law; it only prescribes that that law have the attribute of equality of operation, and equality of operation does not mean indiscriminate operation on persons merely as such, but on persons according to their relations.'   The same principle is repeated and enforced in *Southern Ry. Co.* v. *Greene,* 216 U. S. 400, 417: 'While reasonable classification is permitted, without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed; and classification cannot be arbitrarily made without any substantial basis.'   Classification is the most inveterate of our reasoning processes.   We can scarcely think or speak without consciously or unconsciously exercising it.   It must therefore obtain in and determine legislation; but it must regard real resemblances and real differences between things, and persons, and class them in accordance with their pertinence to the purpose in hand. . . .   The Constitution was intended, its very purpose was, to prevent experimentation with the fundamental rights of the individual.   We said through Mr. Justice Brewer, in *Muller* v. *Oregon,* 208 U. S. 412, that 'it is the peculiar value of a written constitution that it places in unchanging form limitations upon legislative action, and thus gives a permanence and stability to popular government which otherwise would be lacking.' "   In a great number of other decisions statutes have been upheld against an attack upon the ground of alleged violation of

the equal protection clause, and in others statutes have been refused enforcement. *Cockrill* v. *California*, 268 U. S. 258, 262. *Jones* v. *Union Guano Co. Inc.* 264 U. S. 171, 181. They need not be reviewed. The principles do not change. The statutes brought under review are of great variety.

The principles already quoted, reiterated frequently in various forms and often applied, must be taken as indubitable. They may be used to test the validity of any law assailed as violative of the guaranty of equal protection of the laws. These principles in our opinion show that said § 42 has become unequal in its operation upon this defendant in comparison with other companies maintaining similar poles, wires and apparatus in streets or where the public are likely to be injured by contact with them. A classification for the purpose of establishing liability with respect to persons injured by poles, wires and other apparatus without fault, which singles out telegraph companies and excludes telephone companies, electric light, heat and power companies, and street railway companies, does not stand on a reasonable and just basis. We are unable to conceive of any real and substantial distinction for imposing such liability upon a telegraph company and for exempting a telephone company from such liability. So far as concerns a rational and just relation to the safety of the public and to the general welfare, there does not appear to be any real foundation for a classification which fastens such liability on the defendant and frees from such liability electric light, heat and power, telephone, and street railway companies with respect to posts, wires and apparatus. Doubtless in other aspects telegraph companies may be included in a single classification. Statutes establishing special liability for mental anguish in misdelivering or failing to deliver telegraphic messages have been upheld. *Simmons* v. *Western Union Telegraph Co.* 63 S. C. 425. *Nitka* v. *Western Union Telegraph Co.* 149 Wis. 106. *Western Union Telegraph Co.* v. *Commercial Milling Co.* 218 U. S. 406. Manifestly such cases are distinguishable from the one at bar. The Legislature has in many respects placed upon the same footing companies, associations and owners transmitting intelligence

by electricity or otherwise, or transmitting electricity for lighting, heating or power. Indeed, G. L. c. 166 is entitled, "Telephone and Telegraph Companies, and Lines for the Transmission of Electricity." It includes, also, in some particulars street railway companies and electric railroads. There may be other particulars of the activities of these companies which may justify statutes confined in operation to one or another or more of them.

The provisions of said § 42 first appeared in St. 1851, c. 247, § 2. When enacted, its constitutionality was beyond question. At that time the telegraph was the only known instrumentality for transmitting intelligence by electricity or for transmitting electricity at all. Since that time inventive genius has placed other instrumentalities in the same general category as the electric telegraph as to the use of poles, wires and apparatus. A law, valid in its operation when applicable to only one instrumentality, has become unequal in its operation because the ingenuity of the human mind has added to science and industry other instrumentalities falling within the same general classification as to material construction and support of structures in public ways and the use of electricity as a main agency. The statute as drawn was specifically directed to the conditions existing at that time. It was rigid, not flexible in terms. It was not framed to broaden in its scope with changing conditions. It has become too narrow because of the advance in the art of transmitting intelligence and electricity.

It is nothing new in constitutional law that a statute valid at one time may become void at another time because of altered circumstances. A rate for a public utility corporation sufficient to afford fair return on capital invested and hence valid at one time may become confiscatory by increase in costs of production and hence invalid at another time. *Newton* v. *Consolidated Gas Co. of New York,* 258 U. S. 165. The adoption of a constitutional amendment may nullify laws whose constitutionality theretofore was not open to attack. *Neal* v. *Delaware,* 103 U. S. 370. *Ex parte Virginia,* 100 U. S. 339, 346, 347. *National Prohibition Cases,* 253 U. S. 350, 386, 387. *Lester* v. *Garnett,* 258 U. S. 130. Nu-

merous other statutes may become inoperative because of the enactment by Congress of some statute within a field in which it is supreme under the Constitution, although until Congress acts that field may be open to legislation by the several States. *Commonwealth* v. *Nickerson,* 236 Mass. 281, 292, 296, 302–305, and cases there collected. A change in economic conditions may render void a statute valid at its enactment. *Chastleton Corp.* v. *Sinclair,* 264 U. S. 543.

The defendant, although a corporation, may invoke the guaranty of equal protection of the laws assured by the Fourteenth Amendment. *Smyth* v. *Ames,* 169 U. S. 466, 522. *Essex* v. *New England Telegraph Co. of Massachusetts,* 239 U. S. 313.

It was held in *Riley* v. *New England Telephone & Telegraph Co.* 184 Mass. 150, decided in 1903, that Pub. Sts. c. 109, § 12, now embodied in G. L. c. 166, § 42, permitted recovery against a telegraph company for personal injuries sustained by a traveler on a highway as a result of being thrown against a telegraph pole of the defendant without proof of negligence or any fault on the part of the defendant. At that time many of the provisions now found in G. L. c. 166 had been enacted enabling telephone and electric light, heat and power, and street railway companies to place poles, wires and apparatus in public ways. R. L. c. 122. No constitutional question was raised, argued, considered or decided in that case. The facts upon which the present decision rests then existed as matters of common knowledge. The attention of the court was not directed to them. Although there was a vigorous dissenting opinion, no reference therein was made to any constitutional question. Of course that decision is accepted as sound touching the points considered and adjudicated. In such circumstances, that decision is not authority on the constitutional phase of the case at bar. The point here urged by the defendant was not then before the court. It was passed in silence. That decision does not stand as authority for any proposition not discussed. No question having been made in that case as to the point here presented, the court are free to decide it according to what appear to be sound principles. *Cawley* v. *Northern*

*Waste Co.* 239 Mass. 540, 544.    *Louisville Trust Co.* v. *Knott,* 191 U. S. 225.    *Swan* v. *Justices of the Superior Court,* 222 Mass. 542, 545.    *Gibson* v. *Soper,* 6 Gray, 279, 284.    *Kennedy* v. *Commissioner of Corporations & Taxation,* 256 Mass. 426. Of such a decision the most that can be said is that the point was in the case " if anyone had seen fit to raise it.    Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents. See *New* v. *Oklahoma,* 195 U. S. 252, 256; *Tefft, Weller & Co.* v. *Munsuri,* 222 U. S. 114, 119; *United States* v. *More,* 3 Cr. 159, 172; *The Edward,* 1 Wheat. 261, 275–276."    *Webster* v. *Fall,* 266 U. S. 507, 511.    *United States* v. *Mitchell,* 271 U. S. 9, 14.

It follows from what has been said that the request of the defendant, to the effect that G. L. c. 166, § 42, denies to the defendant equal protection of the laws, was sound in law and pertinent to the facts, and that for the same reason there was error in ruling that the plaintiff, if in the exercise of due care, was entitled to recover without regard to the negligence of the defendant.    Since, in the trial court, counsel for the plaintiff conceded that he did not rely on the negligence of the defendant, there is no occasion for another trial.    G. L. c. 231, § 124.    *Loanes* v. *Gast,* 216 Mass. 197, 199.

> *Order dismissing report reversed.*
> *Judgment to be entered for defendant.*