## Kentucky Utilities Company v. Sapp's Adm'r.

(Decided May 26, 1933.)

GORDON, LAURENT & OGDEN for appellant.
P. K. McELROY and J. WALTER HARDESTY for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Howard Sapp, as administrator of Howard Sapp, Jr., brought this action against the appellant, Kentucky Utilities Company, to recover damages for the death of his son, Howard Sapp, Jr., resulting from a collision of the car in which he was riding with the defendant's electric light pole, and caused, it was alleged, by the defendant's negligence in erecting and maintaining it in or so close to the highway as to endanger the safety of the traveling public using it.

Upon trial of the cause, verdict and judgment thereon was recovered against the defendant company for $3,000; hence this appeal.

The accident occurred about 9:20 p. m. on the night of May 23, 1931, on the Lebanon-Sprinfield highway at a point about 100 yards beyond the city limits of Lebanon.

Howard Sapp, Jr., a boy eleven years of age, together with his sister, Dixie Sapp, aged fourteen, were at the time of the accident riding with and as the guests of Russell Cooper in a Ford sedan driven by him, and were, after being given a drive out towards Sprinfield, returning to their home in Lebanon, when, in taking a sharp right turn in the road, Cooper's car swerved to his left-hand side of the highway, over which it ran for some 80 feet or more, when the left rear top of the car "side swiped" or collided with the defendant's electric light pole, standing in close proximity to the edge of the highway. All three occupants of the car were by the collision thrown therefrom onto the road, when both Howard Sapp, Jr., and Russell Cooper were instantly killed and Dixie Sapp badly injured.

Seeking a recovery of damages for the death of his

son, thus caused, Howard Sapp, Sr., as his administrator, instituted this suit against the defendant, Kentucky Utilities Company, claiming that his son had met his death as the result of the negligence of the defendant in erecting and maintaining its electric light pole in evidence on the Lebanon-Springfield turnpike, at a point in or so close thereto as to interfere with travel thereon, and to so obstruct it as to endanger the safety of the traveling public using the highway.

The evidence as to the distance of defendant's light pole, involved in the collision, from the traveled portion of the highway, is very conflicting. The evidence is that the width of the road at this point, measured from the location of the pole in question, which stood near the edge of the left shoulder of the road, directly across the road to a pole of the defendant erected near the edge of the right shoulder at a point opposite, is 23 feet and some inches. All the witnesses testified that the black top, or paved surface, of the road, was 18 feet in width, and further agreed that on either side of this 18-foot pavement there is an additional space covered with gravel or other metal, called a shoulder, which is used by all kinds of vehicles in traveling the highway, though the witnesses vary in their testimony as to the width of this metal strip on the shoulder and also differ somewhat as to the width of the shoulder extending from the paved surface to the drain upon its outer edge.

The pole in question was erected and maintained by the defendant close to the outer edge of this road shoulder, on which, according to the evidence, there were vehicle tracks close up to the pole, showing its use by traffic as a traveled part of the road, but the testimony, even that given by plaintiff's witnesses, is conflicting as to just how close to the traveled portion of the shoulder defendant's pole stood.

Plaintiff introduced five witnesses who testified upon this point. They variously stated that the distance of the pole from the edge of the shoulder metal, or traveled portion of the road, was 12 inches, 8 inches, or 4 or 5 inches, and even that there was no intervening distance, according to the Rev. T. J. Porter, who stated that the old pole stood in the edge, as he understood it, of the shoulder of the road; that the metal on the shoulder came clear up to where the old pole stood; that the buggy and wagon tracks thereon were within 4

inches of the pole; and that, though he had made no measurements, he knew that the pole was in the shoulder of the road—right in the edge, if not in it. Plaintiff's witness, Marvin Parrott, stated he had measured this distance, and that it was 8 inches from the traveled part of the road to the old pole, and that the new pole, with which the old pole, destroyed by the collision, was replaced, was placed 22 inches further back from the road than was the old pole. By another witness it was testified that the new pole was placed 18 inches further back. By yet another of the witnesses, Jos. Hardesty, this distance from the edge of the traveled road to the pole was placed at 12 inches, and he further testified that the old pole was 18 inches out of line with defendant's other light poles, looking towards Lebanon. The witness, Robert Faulkner, district supervisor of roads, stated that the metal extended approximately to the edge, or within 5 inches of the edge of the shoulder, and, when asked if an automobile traveling on the edge of the shoulder would come in contact with the pole, he answered it depended upon the width of the machine; that some of the big trucks would come in contact with the pole, but he hardly thought a Ford sedan would strike it. He further stated that he had noticed the pole was too near the shoulder of the road, from which it was distant 4 or 5 inches. The witness, Will Hamilton, road foreman for the county, stated that it appeared the travel had pressed the shoulder out towards the pole, and that he had, some two months before, directed the company's local manager to remove the pole because its location in the side drain partly stopped up the culvert, causing the water to overflow the road, and also because it constituted an obstruction of the highway.

Further, it was the theory of the plaintiff that Russell Cooper's car was caused to swerve to the left-hand side of the road, when it collided with defendant's pole, by a "blow-out" of his left rear tire, which tended to "drag" his car from the right to the left side of the road.

Supporting this theory, Miss Dixie Sapp, the only living eyewitness of the accident, testified that she noticed the car, when taking the curve, seemed to go to the left, and that the left side of the car then seemed lower than the right; and that she at the time saw nothing in

front of them except the light pole, which she saw just before they struck it. Also Felix Cooper, Russell's brother, stated that at noon on the day of the accident Russell had placed a "boot" on the left rear tire, which had been used for some two years. Also James Robertson, an automobile mechanic who brought in the wrecked car, stated that the left rear casing was found by him off the rim and lying on the ground, and appeared full of cuts.

We have deemed it needful to thus state somewhat at length and in detail plaintiff's evidence because of appellant's contention that it was entitled to a peremptory instruction because it was insufficient to thereon submit the case to the jury. At the conclusion of the plaintiff's evidence, defendant moved for a peremptory instruction, which was refused. Also later, upon the conclusion of all the evidence, and after the trial jury, upon the defendant's motion, had, accompanied by the sheriff and the court, visited and for itself viewed and inspected the physical conditions as to the pole and its nearness to the highway, as found existing at the place of the accident, defendant renewed its motion for a peremptory instruction, which was again refused. Whereupon the court instructed the jury, argument of counsel was heard, and a verdict was returned for the plaintiff in the sum of $3,000, upon which judgment was duly entered. Defendant's motion and grounds for a new trial being overruled, it prosecutes this appeal.

Appellant, by brief of counsel, states that it waives all other alleged errors committed upon the trial except that of the court's refusing to instruct the jury to peremptorily find for it, and states that, if its position on this point is not sustained, the judgment should be affirmed.

Appellant, in support of its position thus taken, first argues that the court should have directed a verdict for the defendant because it had violated no duty which it owed to plaintiff's intestate. In support of this contention, it argues that, as negligence is the failure of one person to perform a duty which it owes to another, while the defendant may owe to a class of persons a certain duty, yet, if a person who does not belong to that class is injured, even as the result of the failure of defendant to perform the duty, there is no cause of action. It further correctly states that "under

the law in Kentucky, as elsewhere, although an electric light company may have a lawful right to construct a pole line in a highway (as it may be conceded was here the defendant's right), nevertheless it is its duty not to locate its poles within the traveled portion of the highway or so close thereto as to make travel on the highway dangerous for those using the highway in the ordinary course of travel." Therefore, the argument continues, if a traveler using the highway in the usual and ordinary manner is injured by reason of the proximity of a pole to the highway, he has a cause of action, and that if, in the present case, the automobile had been traveling in the opposite direction with its right wheels on the traveled portion of the highway, and it had come in contact with the electric light pole, the injured persons would have had a cause of action, because they would have been injured by defendant's violation of the duty which it owed to them. But certainly, it concludes, an automobile cannot be said to be using the highway in the ordinary and usual manner when it is traveling on the left side of the road with its left wheels off the traveled road, and in such state of case the occupants of the car do not belong in the class to which the defendant owed it a duty with respect to the location of its pole.

We are of the opinion that the premise in this argument advanced by appellant is too narrow to embrace within its class of persons to whom a duty is owed yet others of the public who should rightly be included therein when using the highway in the ordinary course of travel, as that term has been construed and defined to be—not as by appellant restricted. It may be first observed that the appellant by his argument here discusses the question of its liability in this case as if it were being sued by the administrator of Russell Cooper, the deceased driver of the automobile, who alone could have been guilty of negligence, if any there was, in his alleged manner of driving his car upon the occasion in question, and not as a suit by the administrator of the eleven year old boy, Howard Sapp, Jr., then a guest in the car, being driven at night, and who had no control over its operation and to whom responsibility for Cooper's negligence, if any, could in no wise be imputed. Further, we do not deem it conclusive of the question of negligence in the operation of a car as to whether or not in all cases its driver, regardless of

existing conditions of traffic upon the highway, at the time of an accident was driving upon the right or left side of the highway, in that section 2739g-35 of our Statutes does not unqualifiedly confine the driver of a car to the right side of the road, under penalty of negligence for any deviation therefrom, but provides that a car must be driven upon the driver's right side of the road, "unless the left side of such highway is clear of all other traffic or obstructions and presents a clear vision for a distance of at least one hundred and fifty feet ahead." The question, therefore, of negligence on the part of a car's driver making occasional use of the left side of a highway appears to have reference to the respective rights of operators of vehicles upon the highway in passing each other as affected by their then relative positions on the highway. However, while the evidence here is that no other vehicles were then in view ahead and using the highway within a distance of 150 feet of Cooper's car, or within any distance ahead so far as it appears by the evidence, we do not wish to be understood as here deciding or expressing an opinion as to whether or not Russell Cooper, the driver, was guilty of negligence upon the occasion in evidence, but expressly decline to anticipate or to here decide any question as to the matter of Cooper's negligence. Such question is not here before us, for the reason that, whether or not Cooper was negligent upon this occasion in the operation of his car, or even if it was the contributing or proximate cause of the collision, his negligence was yet not imputable to his guest, Howard Sapp, Jr., and, therefore, such being our conclusion on this point argued by appellant, it follows that the boy, as Cooper's guest, was within the class to whom appellant owed a duty, if the defendant was guilty of negligence in so placing its pole in or so close to the traveled portion of this highway as to endanger the safety of the public using it in the ordinary course of travel. If the decedent, Howard Sapp, was at the time of the accident causing his death then using the highway, even under the circumstances stated, he must come within and belong to that class of persons, named by appellant, to whom it owed a duty not to endanger their safety in the use of the highway by obstructing it through the negligent location and maintenance of its poles therein.

In Endicott v. Triple-State Natural Gas & Oil Co.,

76 S. W. 516, 517, 25 Ky. Law Rep. 862, the court, in considering the somewhat similar question there presented, said:

" 'Public highways belong to the public from side to side and from end to end, and must be kept safe for the purposes for which they were created. The mere fact that the appellant had a license to plant its pipe line and dig the trench for this purpose along the highway or in the streets of Eden did not exempt it from the duty of taking proper precautions to prevent injuries therefrom to persons using the street. * * * The question of whether it was guilty of negligence or not in the discharge of this duty, or whether the plaintiff contributed to his injury by negligence on his part, was a question for the determination of the jury under the testimony in the case. This court has often announced the rule that, where the testimony conduced in any degree to establish the right of recovery, it was improper to give a peremptory instruction for the defendant, even though the court may be of the opinion that, if there should be a verdict for the plaintiff, it would set it aside."

And again, in Bevis v. Vanceburg Telephone Co., et al., 121 Ky. 177, 89 S. W. 126, 127, 28 Ky. Law Rep. 142, the plaintiff was riding home at night as a guest of Miss Warring, when her buggy struck a telephone pole, throwing her out and causing serious injuries. It was alleged in the petition, as here, that this pole was negligently placed in the highway, and was dangerous to public travel. A directed verdict having been given in the trial court, this court reversed the judgment, saying that the telephone company "nevertheless had no right, in its use of the highway, to so erect its poles and to interfere with or render dangerous the use thereof by the public for purposes of travel, but could do so only 'in such manner as not to interfere with the ordinary use or the ordinary travel and traffic on such highways,' " and continued, saying:

"There is always reasonable ground for apprehending accidents from obstructions to a public highway, and any person who wrongfully places them there, or aids in so doing, must be responsible for such accidents as occur by reason of their pres-

ence. In the case at bar appellees admit putting the telephone poles in the highway. The proof shows it is out of line with their other poles, and is the only one that occupies the highway. Its presence in the road may not in the daytime imperil the safety of persons traveling the highway; but at night, and in the dark, there can be no question of danger therefrom to those upon the highway, and at all times it must be regarded as an obstruction to the highway. * * *

"There was no proof of negligence on the part of appellant or the driver, Miss Warring; but, if there were proof of negligence on the part of the latter, it is not to be imputed to appellant."

We conclude, therefore, that, as the plaintiff has here introduced evidence tending to show that the appellant did place its pole in or so close to the traveled portion of the highway as to endanger the safety of those using it in the ordinary course of travel, its liability therefor, if it did negligently erect it, is not avoided by the plea that the car, colliding with its pole, even if so negligently placed in the road, was at the time of its collision therewith being driven on the wrong side of the road, and a fortiori is such our conclusion, where responsibility for such alleged negligent driving of the car, if any, upon the left side of the road was not imputable to Howard Sapp, Jr., the boy guest riding therein.

Appellant next contends that it was entitled to a directed verdict, because the location of the pole of the defendant was not the proximate cause of the accident; that even conceding, by way of argument, negligence in the location of its pole, its negligence was yet not actionable, unless it was the proximate cause of the accident. In support of this contention, it cites the case of Gosney v. L. & N. R. R. Co., 169 Ky. 323, 183 S. W. 538, 541, L. R. A. 1916E, 458, wherein is quoted from the case of Snyder v. Arnold, 122 Ky. 562, 92 S. W. 289, 28 Ky. Law Rep. 1250, as illustrating the position of this court with reference to the scope and meaning of the term "proximate cause," as being in harmony with its contention here made. The court in the course of its opinion there said:

"The weight of authority seems to be against hold-

ing a defendant liable for all the consequences of his wrongful acts when they are such as no human being even with the fullest knowledge of the circumstances would have considered likely to occur, and the rule is well settled that to fix liabilty upon a person for remote negligence the injury complained of must be one that under all the circumstances might have been reasonably foreseen or anticipated by a person of ordinary prudence to flow from or be the natural and probable consequence of the first negligent or wrongful act.''

This qualification of this rule is stated in Sherman & Redfield on Negligence, sec. 39, in this language:

"It is also agreed that if the negligence of the defendant concurs with the other cause of the injury, in point of time and place, or otherwise so directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable notwithstanding he may not have anticipated or been bound to anticipate the interference of the superior force which, concurring with his own negligence, produced the damage.''

Appellant contends that the qualification of the rule as stated in these quotations, supra, does not permit a recovery against the defendant in the case at bar, or it would have been also so construed to permit a recovery in the case of Nunan v. Bennett, 184 Ky. 591, 212 S. W. 570, and wherein it was quoted with approval, which it cites and strongly insists supports his contention here made that the court erred in not awarding it here, as there, a peremptory instruction.

We find nothing, however, in this cited case which militates against the doctrine as quoted from the Gosney Case, supra. In the Nunan Case the action was brought to recover damages for the alleged negligence of the defendant Nunan in turning on the water supply of the building of which he was the owner. The evidence showed that the ground floor of this building was occupied by plaintiff as a millinery store, and its upper floors were occupied by tenants for living apartments. On the evening of a very cold day, the defendant cut off the entire water supply in the building to avoid plumbing damage by freezing. The next morning he turned

back on the water supply. During the night, when the water was ,cut off, one of the tenants turned on her faucet, and, finding no supply of water, failed to turn it off. On the next morning, when the water was turned on by defendant in the basement, it escaped from the open faucet on the upper floor and leaked through the ceiling of plaintiff's store, damaging her stock of merchandise. This court reversed a judgment awarding damages to the plaintiff, basing its decision upon the proposition that the negligence of the defendant in turning on the water was not the proximate cause of the injury.

We fully agree with the holding there made upon the facts as stated, but we do not regard the case as analogous upon its facts with the case at bar; rather we are of the opinion that the case of Postal Telegraph Cable Co. v. Young, 172 Ky. 576, 189 S. W. 707, 708, also cited by appellant, is much nearer the instant case in principle, and that its facts as there in evidence presented substantially the identical question upon its review, as that here before us. In that case, which was one for damages for personal injuries against the telephone company, the plaintiff recovered a verdict, and the defendant appealed, insisting that it was entitled to a peremptory instruction on the ground that the proximate cause of the accident was the fright of the runaway horse plaintiff's escort was driving and not the improper location of its pole. The court there said:

"The distance from the edge of the metal and from the buggy wheel tracks thereon to the post was from 12 to 16 inches. It also appears that the pole in question was out of line with defendant's other poles, and was nearer to the traveled portion of the road.

"It is first insisted that defendant was entitled to a peremptory instruction, on the ground that the proximate cause of the accident was the fright of the horse and the breaking of the harness, and not the improper location of the pole. This is not a case of concurring acts of negligence on the part of both plaintiff and defendant. It is a case where the runaway was a pure accident and not due to any fault on the part of the plaintiff, and the evidence tended to show the pole was placed so near

to the traveled portion of the highway as to obstruct public travel thereon. In other words, the injury was due both to the runaway and to the negligence of the defendant. The established rule in such cases is that both the runaway and the obstruction may be regarded as the proximate cause, but the runaway, although a proximate cause, will not relieve the defendant from liability if, as a matter of fact, the injury would not have resulted but for the negligent obstruction. * * *

"Here the pole in question was out of line with the other poles of the company and was 4½ feet from the fence. It was on the shoulder of the road about a foot distant from the metal, or that portion of the road used by vehicles. Under these circumstances, it was for the jury to say whether or not the pole was on or so close to the traveled way as to make it dangerous or unsafe for the traveling public."

In the instant case, the testimony given by some of plaintiff's witnesses tended to show the location of defendant's pole collided with was less distant from the traveled portion of the highway than that shown to exist by the evidence in the Young Case, supra, and one witness for plaintiff stated that the pole was even in or against the traveled part of the highway. Therefore, in accord with the ruling of the Young Case, we conclude that under such circumstances it was for the jury here to say upon this evidence heard whether or not appellant negligently placed its pole against or so close to the road as to make it dangerous or unsafe for the traveling public.

This evidence was here given the jury under an instruction that, if they should find from the evidence that the pole was on or so close to the traveled way of this turnpike as to make it dangerous for those using the highway in the ordinary course of travel, and that by reason thereof Cooper ran his automobile into or against said pole, and plaintiff's intestate, Howard Sapp, Jr., was thrown to the ground and received injuries from which he died, they would find for the plaintiff; unless they so believed from the evidence, they would find for the defendant. There was thus, we conclude, submitted to the jury under proper instruction

the question of the defendant's negligence in the location of its pole by the highway at a point closer to its traveled portion than existed in the Young Case, supra, where, upon such evidence, it was held that it was for the jury to say whether or not the pole was on or so close to the traveled way as to make it dangerous or unsafe for the traveling public. Also the jury had here the further evidence before it as to whether there was a negligent or improper placing by appellant of its pole too close to the traveled highway, consisting of the information they had received as to this, afforded them through their own personal inspection and view of the premises, the rule being in this state that the result of the jurors' observations on a view is evidence, which in making up their verdict they may consider in connection with the other evidence in the case. Husbands v. Paducah & I. R. Co., 186 Ky. 294, 216 S. W. 840.

We are thus of the opinion that the court did not err in refusing appellant a peremptory instruction and in submitting plaintiff's case to the jury, the rule being well settled that, "wherever there is any doubt as to the facts, it is in the province of the jury to determine the question, or where there may be a reasonable difference of opinion in the case, as to inferences and conclusions to be drawn from the facts, it is likewise a question for the jury." Majestic Theater Co. v. Lutz, 210 Ky. 92, 275 S. W. 16, 19; City of Lebanon v. Graves, 178 Ky. 749, 199 S. W. 1064, L. R. A. 1918B, 1016; City of Newport v. Schmit, 191 Ky. 585, 231 S. W. 54. Also we find in Hobson's Instructions to Juries this rule there quoted, as follows:

"The rule in this state is that if the plaintiff makes out his case, however much the evidence for the defendant may overbalance that introduced by the plaintiff, he is entitled to have the jury pass upon the issue; and that the court can not in such case give a peremptory instruction, although he may be of opinion that, if the jury should find a verdict for the plaintiff it should be set aside, and a new trial granted."

Lynch v. Snead Iron Works, 132 Ky. 241, 116 S. W. 693, 21 L. R. A. (N. S.) 852; Curran v. Stein, 110 Ky. 104, 60 S. W. 839, 22 Ky. Law Rep. 1575; Thompson v. Thompson, 17 B. Mon. 22; Buford v. Railroad Co., 82 Ky. 286.

In the instant case, whether Cooper's driving upon the left side of the road and his striking of appellant's light pole be regarded as due to his negligence or as the result of an accident caused by the "blow-out" of his tire is here immaterial as, in either event, the collision of the car with appellant's pole was not due to any fault on the part of Howard Sapp, Jr., and therefore both the driving by Cooper of the car into the pole and the obstruction of the highway by appellant may be regarded as proximate causes, but Cooper's action in so driving his car, upon his left side or off the shoulder of the road, although a proximate cause, will not relieve defendant of liability if, as a matter of fact, the injury would not have resulted but for the negligent obstruction of the road by the appellant. Therefore we are of the opinion that appellant's second point insisted upon, that the court should have directed a verdict for it, because the location of its pole was not a proximate cause of the accident, should not be sustained.

Therefore we are of the opinion that, the learned trial court's rulings and judgment being in accord with our views as here expressed, its judgment should be, and is, affirmed.

Whole court sitting.

Richardson, J., not voting.

Thomas and Dietzman, JJ., dissenting.