## Southern Bell Telephone & Telegraph Company v. Edwards.

(Decided Jan. 9, 1934.)

. TRABUE, DOOLAN, HELM & HELM, J. M. RAYBURN and J. C. CANNADAY for appellant.

WITHERS & LISMAN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

On June 22, 1931, Frank Edwards, a youth about 18 years of age, while riding on the running board of a truck driven by James Humphrey, Jr., along Dixon street in Providence, Ky., came in contact with a telephone pole of the Southern Bell Telephone & Telegraph Company and sustained severe injuries. He instituted this action by his father and next friend, and has recovered judgment against the company for $1,500, and it is appealing.

In the petition it is alleged that appellant negligently and wrongfully placed and maintained its telephone poles and especially the pole with which he came in contact in such close proximity to the traveled portion of the street as to render it dangerous and unsafe to persons using the street; that at the time of the accident and for many months prior thereto, appellant knew or by the exercise of ordinary care could have known of the dangerous and unsafe condition in which the pole was placed and maintained.

The first paragraph of appellant's answer is a general denial of the allegations of the petition. In a second paragraph it pleads contributory negligence, and in a third paragraph and in an amended answer it is alleged that the accident was caused solely by the concurrent negligence of appellee and the driver of the automobile. The issues were completed by an agreed order treating the affirmative matter in the answer as amended as controverted of record.

The evidence shows in substance that appellee and young Humphrey who was driving his father's milk truck decided to go bathing. They drove to a drug store to procure a bathing suit belonging to one of the boys and there met two young ladies. At the suggestion of some of the party, the young ladies were taken for a short drive out Dixon street. They got in the seat with Humphrey, and appellee stood on the right

running board, holding to a handle of the door of the truck. While riding in this position, he came in contact with one of appellant's poles with such violence that he was knocked off the running board and sustained a fracture of the skull, total loss of sight in the right eye, and great impairment of the vision of the other.

The street at and near the scene of the accident is 22 or 23 feet in width and surfaced with rock asphalt with a concrete gutter and curb on either side. The concrete gutters are 18 inches wide and have the same slope as other portions of the street, thereby forming a part of the traveled portion of the street. The curb is 6 inches high, and is about the same thickness, but is rounded off at the top next to the street.

Leamon Edwards, father of appellee, testified that the space between the outer edge of the curb and the nearest portion of the base of the telephone pole was 3 inches and others testified to the same effect. Witnesses for appellant testified that this space was about 9 inches, but it is not clear whether they refer to the outer edge of the curb or to the inside, defining the traveled portion of the street; however, we assume from the questions asked they refer to the distance from the traveled portion of the street. Uncontradicted evidence shows that the telephone pole leans toward the street and that a plumb line dropped from the edge of the pole nearest the curb 6 feet from the ground would fall on the curb about one inch from the outer edge thereof.

The Humphrey boy testified that, on approaching the pole which appellee struck, he understood appellee to ask him to drive over toward the pole; that at the time he was driving to the right of the center of the street, and, when appellee made the request, he swerved the truck about 2 feet further to the right. He testified that the right wheel of the truck or tracks of tires having a similar tread were about half on the asphalt and half on the concrete. One of the young ladies in the truck testified that she did not hear appellee make such a request of Humphrey, but that he cautioned him not to drive too close to the pole. While appellee testified that his memory was not clear as to all that occurred immediately before the accident, he was positive that he did not request Humphrey to drive toward the pole. Witnesses for appellant testified to having taken the milk truck to the point of the accident and placing the right wheels partly on the asphalt and partly on the

concrete gutter, and stated that the space between the top of the truck and the telephone pole was ample for one standing on the right running board to pass in safety. Another witness who made demonstrations with his automobile testified that with the wheels of his automobile standing against the curb, it was 12 or 14 inches from the top of the automobile to the telephone pole. He gave as his opinion that the pole did not interfere with or obstruct reasonable or ordinary use of the road by the traveling public, and testified that automobiles or trucks could be driven immediately inside the curb without being obstructed by the pole.

The right of appellant to erect and maintain its poles and lines along Dixon street is not called in question. It is only urged that the company was negligent in the way and manner in which it set and maintained its poles. The sole ground argued for reversal is that the court erred in not sustaining appellant's motion for a peremptory instruction to find for it. As a basis for this contention it is argued (1) that the evidence shows that appellant was not negligent in setting and maintaining the pole in the manner that it did, and (2) that the evidence shows the pole was not the proximate cause of appellee's injuries.

As sustaining his right to recover on the ground that appellant was negligent in maintaining the pole in such close proximity to the street as to make it dangerous and unsafe for those using the street, appellee relies on the cases of Postal Telegraph Cable Co. v. Young, 172 Ky. 576, 189 S. W. 707, 708; Louisville Home Telephone Co. v. Gasper, 123 Ky. 128, 93 S. W. 1057, 29 Ky. Law Rep. 578, 9 L. R. A. (N. S.) 548, and the recent case of Kentucky Utilities Co. v. Sapp's Administrator, 249 Ky. 406, 60 S. W. (2d) 976.

In the Gasper Case it appears that a guy wire attached to one of the telephone company's poles came down into an alley at an angle of about 45 degrees, and its similarity of color with the background rendered it practically invisible. One Dressell was driving a wagon rapidly through the alley when the hub of the rear wheel struck and ran up the guy wire, causing the wagon to overturn and strike Gasper. In upholding a verdict and judgment in favor of Gasper against both the telephone company and Dressell, this court said in effect that, while it was mainfest that Gasper would not have been injured but for the negligence of the driver of the wagon,

it was equally true that, notwithstanding the driver's negligence, the accident would not have occurred had not the original or primary negligence of the telephone company in maintaining a dangerous obstruction in the alley operated to bring about the accident.

In the Young Case the injuries complained of were sustained when a buggy in which Miss Young was riding struck a telephone pole at the roadside. It appears from the opinion that a horse which Miss Young's escort was driving became frightened and ran away. In attempting to pass another vehicle, the buggy struck a telephone pole and was overturned. The pole was on the shoulder of the road, 12 or 16 inches from the edge of the metal surface. The court in affirming the judgment against the telephone company held that in the proven circumstances it was for the jury to determine whether the telephone pole was on or so close to the traveled portion of the highway as to make it dangerous or unsafe for the traveling public. In the course of the opinion it was said:

"In other words, the injury was due both to the runaway and to the negligence of the defendant. The established rule in such cases is that both the runaway and the obstruction may be regarded as the proximate cause, but the runaway, although a proximate cause, will not relieve the defendant from liability if, as a matter of fact, the injury would not have resulted but for the negligent obstruction."

In the case of Kentucky Utilities Co. v. Sapp's Administrator, supra, there was evidence showing that the black top surface was 18 feet in width with shoulders covered with gravel or other metal, and that these shoulders were used by all kinds of vehicles in traveling the highway; that the pole stood close to the outer edge of the metal shoulder. The evidence varied as to the distance of the pole from the shoulder. Some of the witnesses testified that they observed buggy and wagon tracks within 4 inches of the pole, and there was also evidence that the automobile in which Sapp was riding was in and on the traveled portion of the highway when the top struck the telephone pole and caused his injuries. It was held in effect that, in the proven facts and circumstances, it was a question for the jury whether or not the utility company was negligent in maintaining the pole on or near the traveled portion of the highway,

and, if so, whether such negligence was the proximate cause of the injuries complained of.

As a matter of first impression, the cases cited and relied on might appear to be in point or to bear close analogy to the instant case; however, a close analysis will reveal a marked distinction. In all of those cases, the obstructions if not actually on the surfaced portion of the highway, were in very close proximity thereto and on the earth or metal shoulder which may be and often is used by the traveling public as a matter of choice or necessity. Here there is no room for controversy or difference of opinion as to the limits of the highway set apart for vehicular travel, since it is confined to a paved street between the 6-inch concrete curb on either side.

Reasoning from the controlling principle running through the foregoing and other cases, prominent among which are Jackson-Hazard Telephone Co. v. Holliday's Adm'r, 143 Ky. 149, 136 S. W. 135, and Bevis v. Vanceburg Telephone Co., 121 Ky. 177, 89 S. W. 126, 28 Ky. Law Rep. 142, we conceive the rule to be that, in order to render the utility company liable in cases of this character, it is incumbent upon the complaining party to show that the pole alleged to have caused the injuries was erected and maintained upon or so near the highway as to interfere with or obstruct the ordinary use thereof by the traveling public.

The evidence clearly discloses that appellee's head and body projected several inches beyond the traveled portion of the street. This was not an ordinary use of the highway, but, on the other hand, was an unusual and dangerous mode of travel, and none of the cases relied upon by appellee would indicate a right of recovery where the vehicle in, or upon which the injured person was riding or his body projects beyond the edge of the highway and thereby comes in contact with a telephone pole. The company was only required to anticipate that the street would be used in the ordinary way by the traveling public and to so erect and maintain its poles to avoid bringing injury to persons so using it: Without entering into the question of alleged negligence of appellee or the driver of the truck or both of them, our conclusion is that the evidence fails to show actionable negligence upon the part of appellant, and it therefore follows that the court erred in not sustaining its motion for a peremptory instruction.

Wherefore the judgment is reversed for a new trial and proceedings consistent with this opinion.

Whole court sitting, except Clay, J.