STATE of Missouri at the Relation of STATE HIGHWAY COMMISSION of Missouri, Relator-Respondent,

v.

PUBLIC SERVICE COMMISSION of the State of Missouri and William R. Clark, Chairman, and Charles J. Fain, Marvin E. Jones, Howard Elliott, Jr., and Willard C. Reine, Commissioners, all As Members of Said Public Service Commission, Respondents,

The Kansas City Southern Railway Company, Intervenor-Appellant.

No. 25349.

Kansas City Court of Appeals, Missouri.

June 1, 1970.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 5, 1970.

Application to Transfer Denied Dec. 14, 1970.

Robert E. Zimmerman, Jon. M. Waller, Kansas City, for intervenor-appellant.

Robert L. Hyder, Carl E. Williamson, Jefferson City, for relator-respondent.

BROADDUS, Special Commissioner.

This is an appeal by the Kansas City Southern Railway Company from the Order and Judgment entered in the Circuit Court of Cole County, on August 18, 1969, on its review of the Report and Order of the Public Service Commission relating to the cost of maintenance of an underpass over Interstate Highway 435, in Kansas City, Missouri.

The Circuit Court in its memorandum opinion found "that the Order of the Public Service Commission dated April 11, 1968, and the final Order, after rehearing, dated July 30, 1968, on the whole record are capricious, unreasonable and unlawful." The Order of the Court was "that this case be and the same is remanded to the Public Service Commission for further proceedings not inconsistent with the opinion."

On September 20, 1966, the State Highway Commission filed with the Public Service Commission an application requesting permission to construct at the expense of the Highway Commission an underpass grade separation structure on Interstate 435, then under construction in Jackson County, Missouri. The proposed structure was designed to carry the track of the Kansas City Southern Railway Company over Interstate 435 at a location designated as Highway 635 + 77.60 and railroad mile post 15.49. The Highway Commission in its application proposed that the Railway Company be required to maintain the structure at its own expense after its completion. In its Answer, the Railway Company made no objection to the location of the proposed structure and stated its willingness to assume responsibility for the maintenance of the structure with regard to the railroad track and ballast. The Railway Company did, however, vehemently reject the proposal that it bear the duty and cost of maintaining the completed structure for various reasons set out in its Answer.

There were two hearings before the Public Service Commission in this case. The pertinent undisputed facts developed at the two hearings may be summarized as follows:

Mr. Allen Brewer testified for the Highway Commission at the first hearing. He testified to the truth of the matters contained in the Application and in Appli-

cant's Exhibits 1–4 attached to the application.

The Highway Commission tentatively located a portion of Interstate Route 435, Jackson County, Missouri. As tentatively located it would have run through Swope Park in Kansas City. The highway would also have crossed the Grandview Line of the Kansas City Southern by means of a grade separation overpass carrying the highway over a railroad cut. The highway location was subsequently changed to cut through "the extreme southeast corner" of Swope Park and to cross the railroad track by means of an underpass located some distance from the first tentative crossing site. The reason given for the location change was, "Due to local complaints at the location going through Swope Park and some bird-watching area, we were forced to move this line to the present location."

The underpass structure will cost an estimated $369,240, all to be paid by the Highway Commission with aid of federal funds. The Railroad Company estimates annual maintenance at $1909, less railroad ballast replacement.

The Public Service Commission, after authorizing the point and manner of the highway-railway crossing as requested by the Highway Commission, ordered a 75–25% allocation of maintenance costs, with 75% to be borne by the Highway Commission and 25% by the Railway Company. The Order was based on the theory that the "will of the public having changed the plans, the public should bear the expense," and that since the *necessary improvement* of the highway was not occasioned by the railroad, "the presence of the railroad * * * did not in any way enhance the cost of the *necessary improvement.*"

Both the Highway Commission and the Kansas City Southern Railway Company requested a rehearing which was granted by the Public Service Commission.

At the opening of the rehearing the Railway Company objected to the taking of any evidence. The objection was noted in the record to be taken under advisement and ruled upon with the case. The Highway Commission and the Railway Company both presented testimony at the rehearing.

Mr. Allen Brewer testified at the rehearing substantially as at the first hearing except at the rehearing he did not testify as to reasons for the change of highway location. Additionally, he testified that each of the changes in design plans for the subject railroad bridge had resulted in higher costs for construction and maintenance than former design plans required. The final and current plans, resulted from negotiations between Highway Commission representatives and those of the Kansas City Southern Railway, from March 1, 1965, to some time during 1966. The current plans represent the third "layout."

In addition to testimony adduced at the first hearing, it was developed at the rehearing through a Highway Commission witness, Mr. Fletcher, Survey and Plans Engineer at the Highway Commission District office in Kansas City at the time of the tentative location and subsequent change, that public complaints and engineering factors combined to cause the change in highway location. Mr. Fletcher did not testify at the first hearing.

Mr. Fletcher testified the tentative location was made at some time during the period of 1957–1960. As soon as the tentative location became known to the local people through the public press, or otherwise, "literally hundreds of letters" came in to the Highway District office from residents of the Kansas City area, protesting the tentative location because of the adverse effect upon Swope Park. There were also newspaper articles in opposition. Highway Commission representatives held "many, many meetings with the city officials including park officials" regarding the location of the highway. About the same time, continuing studies by

the Highway Commission developed the fact that the Highway Commission would face a shortage of borrow material for construction of the highway through Swope Park on the tentative location. Since the highway would cross the Park on a fill, substantial quantities of borrow material would be required. Borrow material would be "difficult" and "expensive", if not nearly "impossible" to obtain in the area due to the presence of a cemetery and residential development in the vicinity. There was also considered the factor of adverse effect upon the operation of Swope Park.

"There was some question of appearance, since this location would have been on fill or have been elevated above natural terrain through parts of the park. A possibility of greater noise nuisance from an elevated roadway as compared to a depressed roadway."

Subsequent to the rehearing the Public Service Commission published its Report and Order on Rehearing, sustaining the objection of the Kansas City Southern Railway to the taking of any evidence at the rehearing, and sustaining the Railway Company's motion to strike the testimony of Mr. Brewer. It was Mr. Brewer's testimony at the first hearing concerning the reason for the change of highway location to which the Highway Commission had objected which objection the Circuit Court held on review should have been sustained since the witness was not familiar with the reasons for the highway location change. Mr. Brewer is the Highway Commission's officer for handling railway utility matters. Mr. Fletcher was the Highway Commission's Survey and Plans officer at the Kansas City District office at the time of the tentative location of the subject highway and at the time of the highway location change. At no point in the Railway Company's Answer, or in any other pleading, had the question for reasons for changing the highway location been raised.

The Report and Order on rehearing which Order was dated July 30, 1968, reinstated its April 11, 1967, Report and Order, setting out in "Ordered 2:"

"That the Report and Order issued by the Commission on April 11, 1967, in which it was ordered that the State Highway Commission of Missouri pay the Kansas City Southern Railway Company seventy-five (75%) per cent of all future maintenance to the overpass structure and The Kansas City Southern Railway assumes twenty-five (25%) per cent of all future maintenance, be and the same is hereby reinstated * * *."

The reason given by the Public Service Commission in its "conclusions" for sustaining the objection to the taking of evidence and sustaining the motion to strike testimony was that—

"the evidence introduced at the rehearing, on June 15, 1967, presented no facts material or relevant to the issues involved in this case that were not presented at the prior hearing. The evidence produced was in no way evidence that could not have been presented for consideration at the first hearing.

"The Commission is further of the opinion that no evidence was produced at said rehearing that would cause it to alter or amend its Report and Order issued on April 11, 1967."

█ Before discussing the legal questions involved we desire to say that we do not agree with the view taken by the Public Service Commission as to the effect of the granting of a motion for rehearing. It is our understanding of the case law of this State that when a rehearing is granted the case stands as if it had not been previously heard.

Although sometimes referred to by others in this proceeding as *policy,* all concerned seem to be in agreement that, regardless of how named, the *rule* in this state regarding maintenance of grade separation structures at highway railway crossings

is that the *user* of the *upper structure* *maintains* the entire structure "unless there are some definite conditions which would *compel* a different conclusion" (Emphasis added), In re Kansas City, 4 Mo.P.S.S. (N.S.) 248.

■ The stated rule means that if the grade separation structure is an overpass carrying the highway over the railroad, the Highway Commission maintains the structure. If the structure is an underpass, as proposed here, where the railroad goes over the highway, the using Railroad Company maintains the structure. In short, if the structure is a highway bridge the Highway Commission maintains it; if it is a railroad bridge, the Railroad Company maintains it. This sensible well-established rule and long followed practise in this state, has according to the evidence, worked well, the parties understand their responsibilities, no serious problems have arisen, none are foreseen and this is the first case where a deviation from the established rule has ever been ordered.

The Public Service Commission in its Report and Order of April 11, 1967, held, among other things, that no grade crossing was involved and the railroad was therefore not benefited by construction of the grade separation structure.

"The presence of the railroad at the spot finally selected by the Highway Department did not enhance the cost of the necessary improvement at all, for no crossing was required nor was any improvement necessary until the Highway Department established this new highway. The structure here in question will not eliminate any present grade crossing, and has not been made necessary by any action on the part of the railroad."

In the Memorandum Judgment the Circuit Court, after citing the basic doctrine of the case, sets out that the "applicable law is set out in detail in State ex rel. Alton Railroad Company v. Public Service Commission (Viaduct Case) 70 S.W.2d 57, and State ex rel. Wabash Railroad Company v. Public Service Commission, 100 S.W.2d 522."

The *Alton* case, supra, points out the right of the public to travel, and defines the "public highway" character of railroads given them by the State, but asserts, through Judge Hyde, 70 S.W.2d 1. c. 60 (after citing present Art. XI, Sec. 9, Mo. Const.), " * * * Nevertheless, the state remains 'the sovereign of the soil' upon which they are located. * * * The state has the right to build its other public highways, for travel by other means, over, across, or under the railroad. * * * [I]t has the right to build new roads across railroads at new places and provide for the necessary kind of crossing * * * as the public interest may * * * require. *If it did not, it would no longer be the sovereign * * *.*" (Emphasis added)

The cited decision goes on to outline the powers of the Public Service Commission relative to determination of point and manner of crossing and apportionment of costs therefor, and with respect to the latter states, l. c. 60:

"* * * Elimination of danger of collision between vehicles and trains and benefit to the railroad because of that or other reasons is to be considered in proportioning costs, but these matters are not alone controlling. Nor is benefit the fundamental consideration in proportioning expense. *The true basis of apportionment of the cost has been declared by this court to be the extent to which the presence of the railroad at the place enhances the cost of a necessary improvement.*" (citing cases) (Emphasis added)

It is to be noted that the *Alton Viaduct Case* just cited did not involve elimination of a grade crossing which point was raised by the Alton Railroad Company which asserted the crossing by viaduct did not benefit the Railroad. This is the same position taken by the Public Service Com-

mission in its Report and Order of April 11, 1967.

In State ex rel. Wabash R. Co. v. Public Service Commission, 340 Mo. 225, 100 S.W.2d 522, 528, the other case cited by the Circuit Court as applicable law, the Supreme Court, held:

"The true basis of apportionment of the costs has been declared by the court to be the extent to which the presence of the railroad at the place enhances the cost of a necessary improvement."

The *Alton Viaduct case* seems to head a line of Missouri authority on the points, including the *Wabash case, supra.* See the same language in State ex rel. Wabash R. Co. v. Public Service Commission, Mo., 273 S.W.2d 334, 337.

■ As a matter of law, the Railroad Company may even be charged with the entire crossing costs if the presence of its track is the sole cause of a necessary improvement. *Alton Viaduct Case,* 70 S.W.2d l. c. 60, *supra,* citing CRI & P. R. R. Co. v. P. S. C., 315 Mo. 1108, 287 S.W. 617.

These two cases cited by the Circuit Court in its judgment squarely refute the position taken by the Public Service Commission in its Report and Order. The Circuit Court found:

"The finding of the Public Service Commission that the necessary improvement had not been occasioned by any action of the railroad and that the presence of the railroad did not in any way enhance the cost of the improvement is clearly contrary to the law in this state and contrary to the doctrine set out in the two cases cited above. By its reasoning the Public Service Commission has given the sovereign rights to the railroad and made the rights of the State of Missouri servient to the rights of the railroad. The finding * * * is unlawful and not based on the facts of this case."

Section 389.640 V.A.M.S. provides that the Public Service Commission * * * shall, EXCEPT *as to projects of* the State Highway Commission, *apportion the cost* (of highway railroad crossings) among the parties according to the benefits "accruing to each." (Emphasis added)

■■ The Highway Commission is the agency entrusted with the location of highways within the State of Missouri (Article IV, Section 29, Constitution of Missouri, 1945, V.A.M.S., Section 226.130 RSMo 1959, V.A.M.S. State Highway Commission v. Wabash, 6 Mo.P.S.C.(N.S.) (632, 638.) The determination of such location is entirely within the Highway Commission's sound discretion and is not to be interfered with unless so arbitrary and unreasonable as to justify such interference. State ex rel. State Highway Commission v. Riss, Mo., 432 S.W.2d 193, 196, citing State ex rel. State Highway Commission v. Curtis, 359 Mo. 402, 222 S.W.2d 64, 68; State ex rel. State Highway Commission v. Elliott, Mo., 326 S.W.2d 745, 750. The action of the Highway Commission in changing the location in this case was neither "unusual", as shown by the evidence, nor arbitrary or unreasonable, as established by the cases above cited.

Moreover, it has been held in this state that it is no concern of the railroad "where, when and how the state will spend funds, allocated to it by the Federal Government." State ex rel. Wabash R. Co. v. Public Service Commission, 273 S.W.2d, *supra,* l. c. 339, citing Chicago, R. I. & P. R. Co. v. Public Service Commission, 315 Mo. 1108, 287 S.W. 617.

Finally the Constitution and laws of Missouri specifically require that expenditure of highway funds be only under the supervision and direction of state highway employees (Article IV, Section 30, Constitution of Missouri, 1945; Section 226.220, subd. 3, RSMo 1959, V.A.M.S.) In its Report and Order on Rehearing the Public Service Commission ordered "that the State Highway Commission of Missouri

*pay* to the Kansas City Southern Railway Company seventy-five (75%) per cent of the cost of all future maintenance to the overpass structure * * *."

This order is in complete disregard of the mandates of the Constitution and laws of this state.

The writer desires to commend counsel for their able briefs.

The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed. All concur.